The STATE of Ohio, Appellee,

v.

JONES, Appellant.

[Cite as *State v. Jones* (1996), 114 Ohio App.3d 306.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 95–CA–0039.

Decided Sept. 27, 1996.

310

*Greg Morris*, Clark County Assistant Prosecuting Attorney, for appellee.

*Gregory K. Lind*, for appellant.

FREDERICK N. YOUNG, Judge.

Appellant Steven Jones appeals his convictions on four counts of gross sexual imposition, R.C. 2907.05(A)(4), and one count of rape, R.C. 2907.02(A)(1)(b), from the Clark County Court of Common Pleas. Jones was sentenced to two years in the Ohio State Penitentiary on each of the first four convictions, and eight to twenty-five years on the rape conviction, all to be served consecutively. He brings eight assignments of error.

Jones's trial and conviction arose from allegations by two girls, Kimberly Pizzo and Connie Green, that Jones sexually abused them. While the dates of the alleged offenses were uncertain at the time of trial and still remain somewhat uncertain, both girls claimed that they were molested during the spring of 1994 while spending the night with Jones's young daughters at Jones's home in New Carlisle, Ohio. Both girls claimed that Jones fondled them, and one girl alleged that Jones performed oral sex on her.

Kimberly Pizzo, who was ten years old at the time of the alleged abuse, testified that Jones molested her a total of four times on two occasions in the spring of 1994.

According to her testimony, Kimberly became friends with her classmate and neighbor Rachel Jones, the eldest daughter of Jones, and the girls would play together and sometimes spend the night at each other's homes. One day during the third week of March 1994, Kimberly went to the Jones home to play with

Rachel. She alleges that when she arrived, Jones, who was lying on his stomach on a couch, asked her to sit on his back and crack it. She alleged that she complied with his request and that, while she sat on his back, he reached around and touched her over her clothes around her vaginal area. Kimberly testified that when Jones began touching her, she suggested to Rachel, who was sitting on Jones's lower legs, that the two of them go out to buy a pop. Rachel agreed and the girls left the Jones house.

According to Kimberly's testimony, later that day Rachel invited Kimberly to spend the night at her home, and Kimberly accepted. The girls received permission from their parents and went to Rachel's bedroom to watch movies. Rachel shared her bedroom with her younger sister, Amber, and the sisters slept in bunkbeds. Kimberly testified that she climbed onto the top bunk with Rachel and that Amber, her own overnight guest, Connie Green, and Connie's brother Guy sat on the lower bunk. She alleged that Steven Jones entered the room, sat on the top bunk between Rachel and her, who were lying on their stomachs, and began massaging their backs. Kimberly alleged that Jones felt her chest and slid his hands between her legs and felt her vaginal area. She testified that he stopped touching her when his daughter, Amber, called him down to the lower bunk. Kimberly stated that she told no one about this incident at the time.

Kimberly testified that she again spent the night at the Jones house, but could not specify how many days or weeks it was after the night that Jones allegedly first touched her. On the second night, identified by the state as being sometime between March 19 and April 24, 1994, Kimberly spent the night on the lower bunk with Amber Jones. She alleged that, while she slept on the outside edge of the bottom bunk and Amber slept next to the wall, Steven Jones entered the room and began touching her between her legs, on top of her underpants. She stated that she awoke to him touching her, pushed him off, and went directly to the bathroom. She testified that when she returned from the bathroom, Jones had left and she fell asleep again on the bottom bunk.

The next thing Kimberly claimed to remember was Jones reentering the room, removing her underpants, and licking her vagina. She testified that when she told him to stop, he asked her, "Does it feel good?" Kimberly stated that she answered "no" and that, after she again pushed him away, he left the room.

Kimberly testified that she told a friend, Jamie Little, of the incidents and that Jamie urged Kimberly to inform her mother. Within the next two days Kimberly told her mother, Deborah Pizzo, and her mother immediately contacted the police.

Dr. William Matre testified that he is an emergency room pediatrician who examined Kimberly on April 24, 1994. Dr. Matre found no signs of physical trauma or abrasions during his examination, but testified that with "fondling-type

instances" it is common to find no physical evidence. When asked on direct examination whether he felt "based on his experience * * * that Kimberly Pizzo was fabricating her complaint,"Dr. Matre responded in the negative.

Connie Green, who was seven years old at the time of the alleged sexual abuse, testified that Steven Jones fondled her twice on one evening in the spring of 1994.

Connie testified that she, like Kimberly, had stayed overnight at the Jones home to play with Steven Jones's daughters. She testified that the night that she stayed at the Jones house, Steven Jones, Jones's son (also named Steven), Jones's daughters (Rachel and Amber), and Kimberly Pizzo were also present. Connie stated that the girls and Jones watched a movie on television in the Jones daughters' bedroom. She testified that she was lying with Amber Jones on the bottom bunk of the girls' bunkbeds, while Jones sat on the top bunk with Rachel and Kimberly. Connie stated that Jones was massaging the girls' backs on the top bunk until Amber called Jones down to the bottom bunk to massage her back. Jones allegedly climbed down to the bottom bunk and began massaging Amber's back. Connie stated that Amber then went into the bathroom, leaving Connie alone with Jones on the lower bunk.

Connie alleged that Jones began massaging her back, and then pulled down her underpants and fondled her. She alleges that Jones fondled her until she heard Amber returning from the bathroom, at which point Jones got up and left the room.

Connie further testified that, later that evening, Jones requested that Connie and Amber sit on his back while he lay on his stomach in bed. She stated that she complied and that while she sat on Jones's back, he reached around, slid his fingers underneath her underpants and touched her vaginal area. Connie testified that she told her mother about the incident when, about three months later, she overheard Kimberly Pizzo's mother discussing Jones's alleged molestation of Kimberly.

Dr. Robert O. Pyles, Connie Green's family physician, testified that Connie related to him that Jones had molested her. His physical examination of her did not reveal whether or not she had actually been molested.

Rachel and Amber Jones both testified that, while they would sit on their father's back in order to crack it, none of the neighborhood girls was ever asked to or ever did sit on his back. Amber Jones testified that, even when she would have a friend sleeping with her in her bed, she would always sleep on the outside edge of the bed and her guest would sleep against the wall. Rachel Jones testified that her father had climbed onto the top bunk bed only once, in order to hang a net for stuffed toys, and that the bed had begun to crack under his weight. Several defense witnesses, including Jones's wife, testified that Jones was out

fishing on the night that Kimberly and Connie both stayed at the Jones house. Jones himself testified and denied ever having any sexual contact with Kimberly Pizzo or Connie Green.

## I

## First Assignment of Error

"Appellant was deprived of his right to a fair trial by the state's failure to narrow the time frame in which the offense was alleged to have occurred. This error deprived appellant of his right to due process of law guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Section Sixteen of the Ohio Constitution."

Jones alleges that the failure of the indictment and bill of particulars to identify with specificity the dates of the alleged offenses deprived him of a fair trial and due process of law. The indictment alleged that counts 1 and 2, both violations of R.C. 2907.05, occurred "on or about the 18th or 19th day of March, 1994." The indictment also alleged that counts 3 and 4, two more violations of R.C. 2907.05, and count 5, a violation of R.C. 2907.05, occurred "between the 19th day of March, 1994, and the 24th day of April, 1994."

Appellant states in his brief that he requested and received a bill of particulars from the state, but asserts that "[t]he bill did not narrow or specify the times of the offenses as alleged in the indictment." Because neither the bill of particulars nor the request for it is included in the record, and in light of our decision to sustain appellant's third assignment of error, we decline to consider this assignment of error.

## II

## Second Assignment of Error

"Instances of prosecutorial misconduct during closing argument were improper and prejudicial and deprived appellant of his right to a fair trial, in contravention of the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Section Sixteen of the Ohio Constitution."

Here, Jones asserts that the state indulged in three improper and prejudicial statements in closing arguments. First, Jones claims that the prosecutor argued facts that were not in evidence. Second, Jones argues that the prosecution improperly expressed a belief in the credibility of the state's witnesses. Finally, Jones asserts that the prosecution's reference to the improper testimony of Dr. Matre was prejudicial.

The state is entitled to some latitude in its closing argument. *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768. The test for prosecutorial misconduct in closing argument is whether the statements were improper and, if so, whether they prejudicially affected the substantial rights of the accused. *State v. Lott* (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293, 300; *State v. Mundy* (1994), 99 Ohio App.3d 275, 650 N.E.2d 502. In closing arguments, prosecutors may not express their personal beliefs regarding guilt and credibility, and may not allude to matters outside the record. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885. Nevertheless, where a statement not supported by admitted evidence is "short, oblique, and justified as a reply to defense arguments and elicits no contemporaneous objection, there is no prejudicial error." *Lott, supra,* at 166, 555 N.E.2d at 300, citing *State v. Watson* (1969), 20 Ohio App.2d 115, 49 O.O.2d 152, 252 N.E.2d 305.

Because the defense failed to make contemporaneous objections to the prosecutor's statements, each alleged error has been waived. *State v. DeNicola* (1955), 163 Ohio St. 140, 56 O.O. 185, 126 N.E.2d 62, of the syllabus; see, also, *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 662 N.E.2d 311. Accordingly, our review is discretionary and is guided by the plain error standard. Crim.R. 52(B). In order to prevail under this standard, appellant must establish that the outcome of his trial would clearly have been different had the alleged errors not occurred. *State v. Waddell* (1996), 75 Ohio St.3d 163, 661 N.E.2d 1043; *Mundy, supra.* As always, we are mindful that "notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710.

Appellant first contends that the prosecutor's statement during summation that "[b]unkbeds are made strong * * * enough to hold an adult" was improper. This statement, made to cast doubt on the defense's theory that the top bunk could not have withstood Jones's weight long enough for him to have molested Kimberly Pizzo there, may indeed have been improper, in light of the fact that the prosecution offered no evidence during trial regarding the stability of the beds. All the same, in light of the entire record, this comment can hardly be regarded as outcome–determinative so that it would satisfy the plain error standard. *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 616 N.E.2d 909. The prosecution made this passing remark in response to defense counsel's assertion to the contrary, and we cannot say that the result of the proceeding would clearly have been different but for this particular remark. The prosecutor's reference to the stability of the bunkbeds was, in a word, harmless.

Appellant's second claim of prosecutorial misconduct is similarly without merit. Appellant protests the prosecutor's remarks pertaining to "the

credibility of the defendant's children and of Mr. and Mrs. Lewis, parents of one of the victims," but does not adequately identify which statements he finds improper. What statements matching this description we are able to locate in the record clearly do not rise to level of plain error. In his summation, the prosecutor pointed to apparent inconsistencies between the testimony of the alleged victims and the defendant's daughters, telling the jury, "I'll leave you to that credibility [*sic*]." Likewise, the prosecutor pointed out inconsistencies between the testimony of Mrs. Lewis and the testimony of witnesses for the defense, and invited the jury "to look into the credibility of defense witnesses." It is not improper for the prosecution to comment on the credibility of witnesses based on their in-court testimony. *Mundy, supra,* 99 Ohio App.3d at 304, 650 N.E.2d at 520; see, also, *State v. Hill* (1996), 75 Ohio St.3d 195, 661 N.E.2d 1068; *State v. McCray* (1995), 103 Ohio App.3d 109, 120–121, 658 N.E.2d 1076, 1082–1083; *State v. Halley* (1994), 93 Ohio App.3d 71, 637 N.E.2d 937.

 Appellant's final charge of prosecutorial misconduct concerns the prosecutor's repetition of Dr. Matre's testimony that he found Kimberly Pizzo to be truthful. Appellant raises this same issue in support of his third assignment of error, ineffective assistance of counsel. As is discussed below, it is error to allow an expert witness to testify as to that expert's opinion regarding the veracity of a child declarant, and it was improper for the prosecutor to repeat that testimony in his summation. However, in view of the significantly lower standard of review for a claim of ineffective assistance of counsel and our decision to sustain that assignment of error, we are disinclined to hold here that the repetition of improper expert testimony during closing arguments constitutes plain error.

The second assignment of error is overruled.

### III

### Third Assignment of Error

"Appellant was deprived of his rights to effective assistance of counsel by trial counsel's numerous erroneous acts and omissions, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Article One, Section Ten of the Ohio Constitution."

In this assignment of error, appellant claims that he was denied effective assistance of counsel in contravention of his rights under the Sixth and Fourteenth Amendments to the United States Constitution. The performance of trial counsel will be determined to constitute ineffective assistance of counsel only where appellant demonstrates that the representation failed to meet an objective standard of reasonable representation and resulted in prejudice. *Strickland v.*

*Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Prejudice is demonstrated by a showing of a reasonable probability that, but for trial counsel's unreasonably ineffective performance, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. *Id.* Thus, once counsel's performance is found to be flawed, the central concern becomes the extent to which the flaws may have tainted the reliability of the verdict.

Appellant argues that trial counsel's performance dipped below the level of reasonable representation when counsel failed to object to (1) improper opinion testimony by an expert witness, and (2) comments made by the prosecutor in closing arguments. Both alleged mistakes pertain to Dr. Matre's testimony regarding the veracity of one of the alleged victims. The relevant testimony was as follows:

"Q. Okay. Doctor, you previously testified that you've had over a hundred cases of child sexual abuse. So I take that to mean that you have heard over a hundred stories of children coming to you and telling you that they had been sexually abused?

"A. Yes.

"Q. In all that your experience of 16 years of hearing these type[s] of complaints, have you ever heard any complaints that you did not believe?

"A. Yes.

"Q. You've heard complaints that you've thought the child was fabricating the complaint?

"A. Yes.

"Q. Do you feel based on your experience in this area that Kimberly Pizzo was fabricating her complaint?

"A. No.

"Q. Okay. You have no feeling that she was not accurate or that she was not telling the truth?

"A. No."

In addition to summoning forth this testimony, the prosecutor, again without objection, stressed the doctor's testimony in closing statements:

"Now, Dr. Matre sat here and told you that he's had over a hundred sex abuse cases. He's heard a hundred kids talk to him and he believed Kimberly Pizzo. He believes she was straightforward and honest and he listened to her story and he wrote down that his impression was that there was sexual abuse."

■ The doctor's testimony and the prosecutor's reference to it in summation were improper, and defense counsel should have objected to both. The Supreme Court of Ohio has held that "an expert may not testify as to the expert's opinion of the truth or falsity, or accuracy or inaccuracy, of the statements of a child declarant." *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899; *State v. Boston* (1989), 46 Ohio St.3d 108, 129, 545 N.E.2d 1220, 1240; see, also, *State v. Gersin* (1996), 76 Ohio St.3d 491, 668 N.E.2d 486. Moreover, this court has specifically held that failure to object to a doctor's testimony regarding the veracity of an alleged child victim of sexual abuse falls below an objective standard of reasonable representation. *State v. Dale* (July 14, 1992), Greene App. No. 91–CA–25, unreported, 1992 WL 164009. Because the record in this case reveals that Dr. Matre did just that without protestation from defense counsel, defense counsel's performance fell below an objective standard of reasonable representation.

■ We now turn to the issue of prejudice. As discussed below, the prosecution provided ample evidence to support the jury's conclusions that Jones sexually abused the two young girls. However, unlike a claim that the verdict is contrary to the manifest weight of the evidence, which focuses primarily on what the jury *could* have reasonably concluded from the evidence, an ineffective assistance claim requires that we attempt to determine what the jury *would* have concluded had the unprofessional errors not occurred. Accordingly, the mere fact that the jury could have found Jones guilty of the charged offenses without considering Dr. Matre's challenged testimony does not preclude a finding of prejudice for purposes of this assignment of error. Rather, the essential inquiry is the capacity of the improper testimony to influence the jury's collective mind.

■ It is beyond dispute that the trier of facts is the judge of the veracity of witnesses. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. In *Boston, supra,* the Ohio Supreme Court held that it was more than harmless error to allow a doctor to testify as to the veracity of a child. Justice Douglas wrote:

"We have little difficulty in finding that the admission of this testimony was not only improper—it was egregious, prejudicial, and constitutes reversible error. * * * [S]uch an opinion ' * * * acted as a litmus test of the key issue in the case and infringed upon the role of fact finder, who is charged with making determinations of veracity and credibility. * * * In our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses.' " 46 Ohio St.3d at 128–129, 545 N.E.2d at 1240, quoting *State v. Eastham* (1988), 39 Ohio St.3d 307, 312, 530 N.E.2d 409, 414.

*Boston,* as the Supreme Court recently stated, "was about protecting the role of the jury." *Gersin, supra,* 76 Ohio St.3d at 495, 668 N.E.2d at 488. The jury's burden to assess the credibility of witnesses is especially important and arduous in sexual abuse cases such as this, where the lack of physical evidence and eyewitnesses ordains a credibility contest. Where a stream of witnesses tells competing and increasingly confusing stories, we must be mindful of the temptation that testimony such as Dr. Matre's presents to even the most dedicated and independent-minded juror. Faced with the consequences of deciding incorrectly, and the difficulty of deciding at all, jurors may too willingly embrace the opinion of an "expert," if only to remove the burden from themselves.

This court has twice before considered the prejudicial effect of expert testimony on the veracity of statements by child victims of sexual abuse. In *Mundy, supra,* we held that while expert testimony on the veracity of a child declarant is improper, allowing such testimony does not necessarily constitute reversible error. *Mundy,* like the case *sub judice,* involved the elicitation of such testimony without objection by defense counsel. Because defense counsel failed to preserve the issue by making a timely objection to the testimony, and no ineffective assistance of counsel claim was raised, the issue was reviewable only as plain error. In order to find plain error, the court must be able to conclude that but for the admission of the improper evidence, the outcome of the trial would clearly have been different. We declined to reverse the conviction on the ground that Mundy failed to show that he "clearly would have been acquitted" but for the improper testimony. *Mundy, supra,* 99 Ohio App.3d at 312, 650 N.E.2d at 525.

In contrast, *State v. Dale, supra,* involved a similar trial error framed as an ineffective assistance of counsel claim, rather than as plain error. In *Dale,* the prosecution's expert witness testified, without objection by defense counsel, that a nine-year-old boy who had accused his father's friend of molesting him was telling the truth. We held that where the accusation was "essentially uncorroborated" and the jury was primarily charged with determining who was telling the truth, opinion testimony surmising the veracity of a child declarant rendered the trial fundamentally unfair. Accordingly, we reversed the conviction and remanded for a new trial.

Although *Mundy* and *Dale* are apparently in conflict, they may be meaningfully distinguished by reference to the manner in which each claim was framed. In *Mundy,* the improper admission of the testimony was reviewed under the exacting plain error standard. In *Dale,* however, the appeal was based on the inadequate performance of counsel, not simply on the testimony itself. The principal distinction between these two approaches to the issue is the different level of prejudice that needs to be shown to satisfy each standard. Plain error review requires a finding that the outcome clearly would have been

different, while an ineffective assistance of counsel claim requires only a reasonable probability that the result would have been different. Because Jones claims that he was denied effective assistance of counsel, the latter standard controls and the *Dale* decision governs this case.

Nonetheless, appellee argues that this case is factually distinguishable from *Dale*. Appellee notes that the present case involves two alleged victims who identified Jones as their assailant, whereas *Dale* involved only one victim. Appellee does not explain the significance of this distinction. Presumably, appellee is suggesting that the combined accusations have greater credibility than the allegations of an individual child. This might be so, but the defendant's theory that the second alleged victim fabricated her story after overhearing the details of the first tends to diminish the strength of this proposition. In fact, the prejudicial impact of Dr. Matre's testimony is heightened by the existence of a second accuser. While Dr. Matre testified only as to the credibility of Kimberly Pizzo, the jury may have abandoned its role as fact finder with respect to the testimony of both children, assuming that if Kimberly Pizzo was telling the truth, Connie Green probably was also. Any such deference to Dr. Matre's opinion constitutes an improper abdication of the jury's duty.

Defense counsel twice allowed highly prejudicial testimony to be entered into the record without objection: first, in the doctor's testimony on direct examination, and, second, during the prosecution's summation. Appellant's third assignment of error is sustained.

## IV

### Fourth Assignment of Error

"The trial court erred when critical and highly prejudicial testimony that was hearsay, lay opinion, or coached into a child was allowed to be presented without objection, and defendant's constitutional right to due process under the Fourteenth Amendment of the United States Constitution and Article I, Section 10 of the Ohio State Constitution was thereby violated.

"A. The medical doctor who examined the alleged victim improperly testified as to his opinion of the veracity of the statements of the child declarant in violation of *State v. Boston* (1989), 46 Ohio St.3d 108."

First, appellant notes once again that Dr. Matre's testimony regarding the veracity of Kimberly Pizzo was improper. As discussed at length above, we believe that trial counsel's failure to object to the testimony and to its use in the state's closing arguments constituted ineffective assistance of counsel, and thereby deprived appellant of his Sixth Amendment rights, as incorporated into the Due Process Clause of the Fourteenth Amendment. However, we do not hold

that Dr. Matre's testimony, standing alone, constitutes plain error, such that appellant may successfully claim a separate due process violation.

"B. Statements made to social workers by an alleged child-victim who testified at trial are heresy [*sic,* hearsay ] and not admissible."

Here, appellant asserts that Stephania Falke, the Clark County Department of Human Services social worker who interviewed Kimberly Pizzo, was improperly permitted to testify over defense counsel's objection. The content of Falke's interview with Kimberly, appellant urges, was hearsay not within a recognized exception.

 Neither Evid.R. 807 nor Evid.R. 803(4) applies to Falke's testimony. While Evid.R. 807 excludes, under certain circumstances, out-of-court statements by child declarants pertaining to abuse, it applies only where the child's testimony is "not reasonably obtainable by the proponent of the statement." Evid.R. 807(A)(2). Because Kimberly did in fact willingly testify at trial, Evid.R. 807 cannot provide the basis for admitting her out-of-court statements to Stephania Falke. See Evid.R. 807(B). Appellant's brief is primarily devoted to demonstrating the inapplicability of Evid.R. 803(4), which excludes statements made for purposes of medical diagnosis regardless of the availability of the declarant as a witness. Appellant argues that because Falke is a social worker whose function did not include diagnosis or treatment and that Kimberly Pizzo's statements were not taken for purposes of treatment or diagnosis, Evid.R. 803(4) is not applicable. This argument, as even appellee concedes, appears to have some force. See *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220 (casting doubt on the applicability of Evid.R. 803(4) to statements made by child victims of tender years to nonmedical personnel); *State v. Chappell* (1994), 97 Ohio App.3d 515, 646 N.E.2d 1191 (holding that where function of social worker was neither diagnosis nor treatment, the Evid.R. 803[4] exception did not apply to child declarant's out-of-court statements); see, also, *State v. Eastham* (1988), 39 Ohio St.3d 307, 312, 530 N.E.2d 409, 413 (Herbert R. Brown, J., concurring); *In re Brofford* (1992), 83 Ohio App.3d 869, 615 N.E.2d 1120.

We find it unnecessary to reach this issue. In reviewing the record, we note that Falke did not testify as to the alleged victim's statements during direct examination by the state. Rather, her testimony pertaining to the out-of-court statements of Kimberly Pizzo was limited to defense counsel's cross-examination and the state's redirect. This suggests that (1) Stephania Falke's testimony on cross-examination did not actually contain hearsay at all, and (2) to the extent that any of Falke's testimony regarding Kimberly's out-of-court statements may have been inadmissible hearsay, appellant invited the error.

█ Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Falke's testimony on cross-examination regarding Kimberly's statements was not elicited for its truth, but rather, it was intended to impeach Kimberly's credibility by revealing earlier conflicting statements. Such statements that are offered solely to impeach are of no substantive evidentiary value, and the hearsay rule and its exceptions are not implicated. See *Dayton v. Combs* (1993), 94 Ohio App.3d 291, 296, 640 N.E.2d 863, 866. That defense counsel's cross-examination of Falke was intended to point out inconsistent statements by Kimberly Pizzo, not substantive evidence, is apparent from both the repeatedly expressed intentions of the defense attorney and the tenor of the cross-examination.

█ Defense counsel elicited testimony, *over the state's objection,* that he now denounces as hearsay. Even if Falke's testimony included hearsay, which we doubt, we find that the rule of invited error governs this assignment of error. Any error with respect to Falke's testimony, including any hearsay elicited by the state in redirect in response to defense counsel's cross-examination, was invited by the defendant. A party who invites an error may not demand from the appellate court comfort from its consequences. See *State v. Chappell* (1994), 97 Ohio App.3d 515, 537, 646 N.E.2d 1191, 1204.

The fourth assignment of error is overruled.

## V

### Fifth Assignment of Error

"The trial court erred when it ruled that the videotaped statement of the child declarant was not permitted to be viewed by the jury for purposes of showing inconsistencies in the child's statements in contravention of the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Section Ten of the Ohio Constitution."

Appellant contends that the trial court erred to his prejudice by denying his request to show a videotaped statement of Kimberly Pizzo to the jury. While the precise grounds for this alleged error are unclear, appellant asserts that the court's ruling was plain error. Although we believe that the trial court should have granted the appellant's request to show the video, we conclude that the ruling did not prejudice the appellant in any demonstrable respect.

█ Appellee correctly points out that the videotaped statement is hearsay not within any recognized exception. Accordingly, it could not be admitted as substantive evidence. As discussed above, however, the allegedly inconsistent

statements on the tape were admissible for impeachment purposes. Defense counsel was prevented from showing the videotape itself, but he was allowed to introduce the statements, in some cases by reading liberally from a written transcript of the tape, at several points of the trial. While we note that we favor the use of a recorded statement over a transcript of the same statement, *State v. Rogan* (1994), 94 Ohio App.3d 140, 148, 640 N.E.2d 535, 540, we hold that, here, appellant's ability to present his defense was not materially compromised by the trial court's ruling.

The fifth assignment of error is overruled.

## VI

### Sixth Assignment of Error

"The verdict is against the manifest weight of the evidence."

Appellant Jones next contends that the verdict is against the manifest weight of the evidence and, therefore, should be reversed.

Jones was convicted of four counts of gross sexual imposition in violation of R.C. 2907.05, and one count of rape in violation of R.C. 2907.02(A)(1)(b). R.C. 2907.05 reads:

"(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

" * * *

"(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

"Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

R.C. 2907.02 provides:

"(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

" * * *

"(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

"Sexual conduct" is defined as "vaginal intercourse between a male and a female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex." R.C. 2907.01(A).

When reviewing a criminal conviction to determine whether the evidence is sufficient to support the verdict, the relevant inquiry is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. The standard of review is essentially the same for a claim that the verdict is against the manifest weight of the evidence. *Id.* However, the manifest-weight analysis departs from the sufficiency-of-the-evidence standard in two subtle but significant respects. *State v. Hufnagel* (Sept. 6, 1996), Montgomery App. No. 15563, unreported, 1996 WL 501470. First, a manifest-weight claim requires the court to consider not only the sufficiency of the evidence if believed, but also the believability of the evidence. *Id.* at 6. Thus, a verdict may be supported by sufficient evidence, yet be against the manifest weight of the evidence. Accordingly, we must look not only at the amount of evidence presented, but also at the evidence's capacity to persuade. Second, when conducting the manifest-weight analysis, we do not construe the evidence "in the light most favorable to the prosecution"; rather, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.* at 9, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720, paragraph three of the syllabus.

With respect to the first count of gross sexual imposition, Connie and her mother, Christy Lewis, testified that Connie was under the age of thirteen at the time of the alleged molestation. Connie Green also testified that Jones fondled her twice in one evening. This testimony provided sufficient evidence to support Jones's conviction on the first count in the indictment. *State v. Gingell* (1982), 7 Ohio App.3d 364, 7 OBR 464, 455 N.E.2d 1066.

Regarding the other four counts, Kimberly and her mother, Deborah Pizzo, testified that Kimberly was also under the age of thirteen on the two evenings involved. Kimberly Pizzo testified that Jones fondled her between her legs twice on the first night in question, and fondled her once and performed cunnilingus on her once on the second. This testimony might have been adequate to support two counts of gross sexual imposition occurring on the first night and one count of gross sexual imposition and one count of rape occurring on the

second night. However, the indictment charged Jones with three counts, two counts of gross sexual imposition and one count of rape, occurring on the *second night*, between March 19 and April 24, 1994. Kimberly testified as to only two sexual encounters on the second night, and the state provided no additional evidence of a third incident of sexual contact on that night. Kimberly's testimony regarding Jones's fondling of her on the second night provides sufficient evidence to support the third count of gross sexual imposition. See *Gingell*, *supra*. Likewise, Kimberly's testimony that Jones performed cunnilingus on her is also sufficient to support the count of rape. R.C. 2907.01(A). The grounds for the other conviction of gross sexual imposition arising from the second night are mysterious.

Although Jones's alleged act of cunnilingus may constitute both gross sexual imposition and rape, "where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25; see, also, the Fifth Amendment to the United States Constitution; Section 10, Article I, Ohio Constitution. Gross sexual imposition and rape are allied offenses of similar import within the meaning of R.C. 2941.25. *State v. Abi–Sarkis* (1988), 41 Ohio App.3d 333, 535 N.E.2d 745. Likewise, gross sexual imposition is a lesser included offense of rape, *State v. Johnson* (1988), 36 Ohio St.3d 224, 522 N.E.2d 1082, for purposes of double jeopardy. Jones may not be convicted of and sentenced for both where they arise from the same conduct. While it is prejudicial plain error to impose multiple sentences under these circumstances, we prefer to resolve this issue as it is presented by appellant, as a manifest-weight argument, rather than as a *sua sponte* reversal on statutory or constitutional grounds. Thus, as we are unable to locate in the record independent evidence supporting the fourth count of gross sexual imposition on the second night, we hold that the conviction on count four of the indictment was contrary to the manifest weight of the evidence, and we reverse both the conviction and its attendant two-year sentence.

Regarding the other counts, the jury could have reasonably concluded that the essential elements of four of the five charges were proven beyond a reasonable doubt on the strength of the girls' testimony alone. See, *e.g., State v. Love* (1988), 49 Ohio App.3d 88, 550 N.E.2d 951; *Gingell*, *supra*. Accordingly, those four convictions are supported by sufficient evidence. Nevertheless, appellant insists that the child witnesses fabricated their testimony and exhorts us to make our own determination as to the credibility of these witnesses. While the manifest-weight analysis allows us to examine the credibility of witnesses, we do so with extreme restraint. See *Hufnagel, supra* (Sept. 6, 1996), Montgomery

App. No. 15563, at 10, 1996 WL 501470. As we cannot say that it is "patently apparent that the fact finder lost its way," we decline appellant's invitation. See *id.*

Accordingly, the sixth assignment of error is sustained as to count four only. The assignment of error is overruled with respect to counts one, two, three, and five.

## VII

### Seventh Assignment of Error

"The trial court erred to the prejudice of the appellant's substantial right to a fair trial and due process of law by failing to recognize and correct multiple instances of plain error which occurred during his trial."

Appellant makes a blanket assertion that his right to a fair trial and due process was unconstitutionally compromised by the "multiple instances of plain error," and calls it his seventh assignment of error. This assignment of error contains no grounds for relief not considered elsewhere in our opinion. Thus, we find no independent merit in this assignment of error, and it is accordingly overruled.

## IX

### Eighth Assignment of Error

"The trial court erred to the prejudice of the appellant's substantial right to a fair trial and due process of law by failing to allow the testimony of key defense witnesses."

In his eighth and final assignment of error, appellant declares that the trial court's failure to allow "the testimony of key defense witnesses" constituted plain error. While it appears from the record that appellant was denied the opportunity to present certain witnesses and evidence at trial, we are unable to determine, and appellant does not identify, the substance of the alleged error or the specific grounds for review. See App.R. 12(A)(2); App.R. 16(A)(7).

Neither our reading of the record nor appellant's brief supports the alleged due process deprivation. Accordingly, the eighth assignment of error is overruled.

Because we sustain appellant's third assignment of error, we reverse and remand for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WOLFF and FAIN, JJ., concur.