OPINION
Defendant, Mark Beeson, appeals from his conviction and sentence for violating a civil protection order.
Defendant and Sandra Beeson were divorced in June 2001. They have two sons, Jonathan and Dylan Beeson. As part of the final divorce decree, the Domestic Relations Court granted Sandra Beeson a civil protection order which prohibits Defendant from coming within five hundred yards of Sandra and their children.
On August 19, 2001, at around 7:00 to 7:30 p.m., Sandra walked her children to the playground at Orchard Park Elementary School in Kettering to allow them to ride their bicycles. Sandra's mother, Florence Ryan, and her husband, Robert Ryan, were with them.
As they approached the school, Sandra saw a black truck moving along the street very slowly toward the school. Sandra became alarmed because the truck resembled Defendant's truck, which Sandra and her mother believed they had seen shortly before at a stoplight. Sandra briefly lost sight of the truck, but moments later the same black truck pulled into the driveway of the school and stopped. The passenger window of the truck was rolled down and both Sandra and her mother, Florence Ryan, observed Defendant sitting in the driver's seat. Defendant stared at Sandra and her family for two or three minutes.
Sandra used her cell phone to call 911. Another man who was at the school with his family observed this and asked Sandra if she was alright. Sandra explained that her ex-husband was in the black truck and that she had just called police. The man speaking with Sandra was Robert Green, an off-duty Kettering police officer.
Defendant was subsequently indicted on one count of violating a civil protection order, with a specification that Defendant had previously been convicted of that same offense. R.C. 2919.27(A)(1),(B)(1)(b). Following a jury trial Defendant was found guilty as charged. The trial court sentenced Defendant to six months imprisonment.
Defendant has timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN NOT DECLARING A MISTRIAL WHEN OFFICER GAVE TESTIMONY THAT WAS PREVIOUSLY ORDERED TO BE EXCLUDED AT TRIAL."
Defendant filed a pretrial motion to exclude any testimony by Jonathan and Dylan Beeson, alleging that they were incompetent to testify because of their tender age. The State responded that it would call neither child to testify at trial.
Subsequently, defense counsel learned during a pretrial conference that the State intended to introduce into evidence, through the testimony of Florence Ryan, Jonathan's maternal grandmother, a statement allegedly made by Jonathan after he observed Defendant's truck at the school, "there's daddy." Defense counsel filed a motion in limine seeking to exclude this hearsay statement. Following a hearing, the trial court ruled that, notwithstanding whether he is competent to testify as a witness, Jonathan's statement would be admitted if it qualified under the excited utterance exception to the hearsay rule. Defendant subsequently subpoenaed Jonathan Beeson as a witness for trial.
Prior to the start of Defendant's trial, the State and Defendant reached an agreement concerning the State's proposed use of Jonathan Beeson's statement. The State agreed to not offer evidence of Jonathan's statement, "there's daddy," in exchange for Defendant's agreement to not call Jonathan as a witness. The trial court adopted the parties' agreement, stating:
 "JUDGE TUCKER: All right. So, basically what that means then is this, there will be no other other than mentioning that Jonathan was there, there will be no testimony regarding Jonathan's reaction to whatever he may or may not have seen. And there'll be no no attempt to get any statement that Jonathan may or may not have said into evidence through any Hearsay Exception." (T, p. 4)
At trial, during Defendant's cross-examination of Edward Drayton, the Kettering police officer who investigated this alleged violation of the protection order, the following exchange took place:
 "Q. Officer, on August 19, 2001, Sandra Beeson never actually told you that she saw Mark Beeson driving that truck; correct?
"A. That's correct.
"Q. Excuse me?
"A. Yes.
"Q. That is a correct statement?
"A. Mmm Hmm.
 "Q. In fact, she said: "Mom and Mom and Dad saw it. I didn't see it." Is that correct?
 "A. That's what I had to actually get her to to fig — that's what I had to figure out, yes.
 "Q. Okay. So, who is the person now that is saying that they saw Mark Beeson driving the truck, based on your investigation?
"A. Would've been the mother.
"Q. Just the mother?
"A. Uh . . .
"Q. Not Sandra?
"A. The boy, too." (T. 225-226)
Defendant immediately objected and moved for a mistrial, arguing that the State had violated the court's order excluding any evidence about what Jonathan may have seen or said by failing to properly admonish its witness concerning the matter. The trial court denied Defendant's motion for a mistrial. Defendant argues on appeal that the trial court erred in overruling his motion for a mistrial.
Granting or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Treesh, 90 Ohio St.3d 460, 480,2001-Ohio-4. A mistrial should not be ordered merely because some error or irregularity has intervened. Id. The granting of a mistrial is necessary only when a fair trial is no longer possible. Id.
As the trial court correctly noted in overruling Defendant's motion for a mistrial, the testimony about which Defendant now complains was not elicited by the State. It was elicited by Defendant during cross-examination of the State's witness, Officer Drayton.
The general question that defense counsel asked Officer Drayton was, based on his investigation, who said that Mark Beeson was the driver of the truck. As framed, the question tended to invite the response that Officer Drayton gave, identifying Jonathan as one of those persons. Perhaps the qualification "now that is saying" was intended to limit the inquiry to witnesses who testified at trial, and Jonathan didn't testify. Certainly, the question "Not Sandra" didn't justify the officer's response, "The boy, too." However, he could have been speaking in reply to the question, "Just the mother?" The rapid give and take of cross-examination permits that to happen, especially when questions are not artfully framed.
Defendant's strategy at trial was to try to show that Florence Ryan, his former mother-in-law, bore such an animus against him that she concocted the story that he was at the school, and convinced his former wife, Sandra Beeson, to support it. To that end, Defendant tried to show that Sandra Beeson had not told Officer Drayton, expressly, that Defendant was there. Of course, her call to 911 belies the significance that omission may have had. Therefore, the fact that Jonathan was heard to say "there's daddy" became important, and Defendant worked diligently to exclude it from the State's case. Unfortunately for him, Defendant asked one too many questions in order to hammer home his point, and it backfired.
We are not unmindful of the fact that police officers who both testify frequently and have an interest in the prosecution sometimes look for ways to get damaging information into evidence. That may have happened here, but whether it did, we cannot say. It would have been prudent for Defendant to have asked the court to direct the State to instruct its witnesses to not testify concerning Jonathan's statement, but he didn't and the court gave no such instruction. We concede that the value of that observation relies on hindsight, but hindsight is an inescapable part of appellate review.
We find that the error of which Defendant now complains was invited error. A party is not entitled to relief from error he invites. State v.Jones (1996), 114 Ohio App.3d 306, 322. Therefore, the trial court did not abuse its discretion when it overruled Defendant's motion for a mistrial.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
"THERE WAS PLAIN ERROR DUE TO PROSECUTORIAL MISCONDUCT WHEREIN THE STATE MADE IMPROPER PREJUDICIAL COMMENTS TO DEFENSE COUNSEL ABOUT COUNSEL TRYING TO `LET THINGS SLIP INTO EVIDENCE.' BEFORE A JURY, AND THE TRIAL COURT ERRED BY NOT GIVING A CURATIVE INSTRUCTION WHEN THE PROSECUTOR INTIMATES: `HE DID IT BEFORE, SO HE'D DO IT AGAIN.'"
The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Bey, 85 Ohio St.3d 487, 493,1999-Ohio-283. The focus of that analysis is on the fairness of the trial, not the culpability of the prosecutor. The prosecutor is entitled to a certain degree of latitude in summation, and in determining whether the prosecutor's remarks were prejudicial the State's closing argument must be viewed in its entirety. Treesh, supra. Prosecutor misconduct does not warrant reversal of a conviction unless it is clear beyond a reasonable doubt that absent the prosecutor's remarks, the jury would not have found Defendant guilty. State v. Benge, 75 Ohio St.3d 136,1996-Ohio-227; State v. Hairston (June 11, 1999), Montgomery App. No. 17218.
Defendant complains about the following remark during the State's rebuttal closing argument:
 "They [the State's witness] came in here and testified to what they did know and that was that Defendant was comin' around again just like he had done before. He can't let it go. If anyone's got a problem, he does. He can't let it go." (T. 349).
Defendant timely objected, arguing that the prosecutor was using his prior conviction to suggest that "if he did it before, he'll do it again." The trial court overruled Defendant's objection.
As part of its case-in-chief, and in order to elevate this offense to a felony, the State was required to prove that Defendant had previously been convicted of violating this protection order, which it did. Sandra Beeson testified about previous instances in which she saw the Defendant drive past her house, and that she had seen him shortly before on that same day. Thus, the prosecutor's remark was an accurate comment upon the evidence presented. Indeed, the very existence of a civil protection order suggests some prior misconduct. In any event, the trial court gave an appropriate limiting instruction to the jury that Defendant's prior conviction could not be considered as evidence that he committed this offense. We cannot say that but for this remark by the prosecutor, the jury would not have found Defendant guilty. The evidence against him was overwhelming.
Defendant additionally complains about this remark during the State's rebuttal closing argument:
 "The only evidence you can consider is what came from up here, not what I'm tellin you, not what he [defense counsel] told you or tried to let slip during the trial." (T. 352).
Defendant timely objected to this comment, and the trial court sustained that objection. In its jury instructions the trial court reminded the jurors that the only evidence they could consider was the testimony coming from the witness stand and the exhibits.
A review of the prosecutor's rebuttal closing argument in its entirety reveals that this challenged remark was made while the prosecutor was urging the jury not to be distracted by defense theories, and was attempting to focus the jury's attention upon what the State believed mattered in this case; the testimony of Sandra Beeson and Florence Ryan, the two people who testified that they saw Defendant in his black truck at the school. Nevertheless, the State concedes that this remark was improper, and we agree.
To the extent the remark implies some wrongdoing on the part of defense counsel, it is a personal attack upon the professional integrity of counsel. Such personal attacks serve no legitimate purpose in a criminal trial, and they demean the process. Indeed, jurors, who generally comport themselves in ways which show that they view the trial process seriously, probably hold such comments more against the person who utters them than the subject of the remark.
That said, in reviewing the prosecutor's closing argument as a whole we are confident that this brief, isolated comment did not deprive Defendant of a fair trial in light of the overwhelming evidence of Defendant's guilt. On this record we cannot say that but for this improper comment, the jury would not have found Defendant guilty.
The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN NOT ALLOWING DEFENDANT'S EXCULPATORY STATEMENTS (EVIDENCE) TO BE HEARD."
In his final assignment of error Defendant argues that the trial court abused its discretion in not allowing him to present certain exculpatory evidence: specifically, his statement to Kettering police that he was not in Kettering on the day of this incident.
Defendant claims that when he was questioned by police about this incident, he told them he was not even in Kettering on the day this happened. During cross-examination of Det. Meyer, when defense counsel asked whether Defendant had indicated whether he was in Kettering on August 19, 2001, the trial court sustained the State's objection to that question. Likewise, when defense counsel asked Det. Meyer whether Defendant had made any incriminating statements putting him in Kettering, or any statements against his penal interests, the trial court sustained the State's objection to those questions and did not permit Det. Meyer to answer.
Defendant argues that allowing Det. Meyer to testify that she interviewed Defendant but prohibiting her testimony about the exculpatory statements Defendant made during that interview, leaves an impression in the juror's minds that Defendant was guilty and either made incriminating admissions or refused to cooperate and is now trying to hide it. That, as the State points out, is pure speculation.
In support of his claim that he told police he was not in Kettering on the day this incident occurred, Defendant has attached to his appellate brief one page from the police report of Officer Drayton. That police report was not admitted into evidence, however. Thus, this court cannot add that matter to the record on appeal and then use it to decide this appeal. State v. Ishmail (1978), 54 Ohio St.2d 402. Moreover, we note that neither Officer Drayton nor any other witness testified about the exculpatory statement Defendant claims he made. That is because Defendant's attempt to introduce his exculpatory statement through other witnesses violates the rule against hearsay.
"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; State v. Steffen (1987), 31 Ohio St.3d 111, 119.
Evid.R. 801(D)(2) excepts from the definition of hearsay an out-of-court statement by a party opponent that amounts to an admission of the claims against him. It is on that basis that confessions are readily admitted. That does not mean that the reverse, a denial of civil or criminal liability, is likewise admissible. A denial does not have the same inherent reliability as a person's admission against his own interest. It is, or at least very well may be, self-serving. Therefore, a denial remains inadmissible hearsay if the proponent offers the statement to prove the truth of the matter involved.
Defendant's out-of-court exculpatory statement that he sought to introduce through the testimony of other witnesses was clearly offered to prove the truth of the matter asserted, that he was not in Kettering on the day this incident occurred, and constitutes hearsay. The trial court did not abuse its discretion in refusing to admit that evidence.
The third assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. and YOUNG, J., concur.