OPINION
{¶ 1} Richard Markland appeals from his conviction and sentence in the Common Pleas Court of Miami County, following a jury trial, upon one count of rape with a specification that the victim was less than ten years old at the time of the offense and one count of gross sexual imposition. *Page 2 
 {¶ 2} The record reflects that Markland and his late wife had an on-going relationship with Markland's step daughter-in-law and his step-grandchildren, J.A. and A.A. As part of this relationship, the grandchildren would frequently spend the night with Markland and his wife. In April 2005, Markland's wife passed away. Immediately following her death, Markland ceased most visitation with his grandchildren until the fall of 2005, with the last visit being November 2005. J.A., who was eight years old at the time of the offense, testified that on several occasions during these final visits, Markland would rub her vaginal area with his hands and then insert his fingers into her vagina while she was half asleep in bed.
 {¶ 3} J.A. did not tell anyone about Markland's actions until early February 2006. At that time, J.A.'s mother asked if J.A. and her younger sister wanted to spend the night at Markland's house. J.A. responded that she didn't want to because Markland touched her when she was sleeping. J.A.'s mother subsequently filed a report with the Covington Police Department.
 {¶ 4} Following discussions with J.A., her mother, and Deanna Hardin, a Victim Witness Advocate, Markland was called to the police station for an interview on February 18, 2006. Upon his arrival, he was advised that he was not under arrest and that he was free to leave at any time. Markland denied all allegations of inappropriate touching, although he did admit to rubbing J.A.'s stomach to help her fall asleep when she had not been feeling well and picking J.A. up to move her in the bed when there was a conflict between her and A.A.
 {¶ 5} Two days later, Markland appeared at the police station voluntarily. He again denied any inappropriate contact with J.A. He further provided that the allegations *Page 3 
against him might have been the result of confronting J.A. about his wife's missing wedding ring. According to Markland, he allowed J.A. to play with his wife's jewelry and make-up during her visits. The ring, however, came up missing after J.A.'s second to last visit. When Markland asked J.A. about the ring, she denied taking it. At trial, J.A. repeated that she did not take the ring. She further testified that Markland had told her she was in trouble for taking the ring. At the end of J.A.'s visit in November 2005, Markland found the ring on a desk in the television room.
 {¶ 6} Markland was arrested on February 24, 2006 and taken to the Miami County Jail. There, he was asked standard personal information and medical questions during the book-in procedure. Officer Geramy Mullenix testified that Markland made the following incriminating statements at that time:
 {¶ 7} "A: We were currently going through the medical questioning of Mr. Markland, and during the questioning, he just came out and said that I knew they'd come and get me for what I'd done, and then he continued mumbling on.
 {¶ 8} "Q: What did you say?
 {¶ 9} "A: At that point he was mumbling on. During his mumbling I'd heard the word, died. It's my responsibility to protect the inmates, so I asked him what he said again. Again, Mr. Markland said, I knew the cops would come get me for what I'd done. He said, I knew it was wrong, but after my wife died." (Tr. at 159-60.)
 {¶ 10} Officer Mullenix thereafter documented what Markland had said and faxed a copy of his report to the Covington Police Department. At the trial, it was noted that the date indicated on the top of the faxed copy was March 2, 2006. According to Officer Mullenix, a second copy of his initial report was faxed to the police station on account of *Page 4 
a spelling error in Markland's name, although he admitted that no correction was made. The defendant pointed out, however, that Officer Mullenix's testimony was inconsistent with his previous testimony during the September 15, 2006 suppression hearing where Officer Mullenix asserted that he did not send a second fax to the Covington Police Department. Furthermore, Officer Tim Lunsford of the Covington Police Department testified that he received a call from Officer Mullenix concerning the statement, and that he advised Officer Mullenix to fax the report to the police station. Officer Lunsford provided that he received one faxed copy, which he placed in the mailbox of Chief Lee Harmon.
 {¶ 11} Markland was indicted in the Common Pleas Court of Miami County for one count of rape of a minor under thirteen years of age, in violation of R.C. 2907.02(A)(1)(b), with a specification that the victim was less than ten years old at the time of the offense, and one count of gross sexual imposition of a child under thirteen years of age, in violation of R.C. 2907.05(A)(4). A competency hearing was held on November 9, 2006, at which time the trial court determined J.A. to be competent to testify at trial. The jury trial commenced on November 14, 2006.
 {¶ 12} In addition to the testimony of J.A., her mother and the officers, the State also presented testimony at trial from Dr. Ralph Hicks, a pediatrician based at the Children's Medical Center in Dayton, Ohio, and former head of the center's child abuse team. Dr. Hicks testified that he examined J.A.'s clinic care report and found no physical evidence of sexual abuse. According to Dr. Hicks, this finding was not inconsistent with touching associated to digital penetration when there is a lapse of time between the actual contact and the exam. He further offered that physical findings *Page 5 
specific to injury appear in less than ten percent of cases in which children with a history of sexual abuse are examined. Moreover, Dr. Hicks indicated that approximately 12 percent of the cases referred to the medical center's abuse team resulted in no sexual abuse being found after examinations and lab work. However, in those cases in which abuse is suspected, Dr. Hicks provided that approximately 50 percent of the time a referral is made for psychological assessment or counseling. As to J.A., the clinic care report indicated that she kicked and "fought" in her sleep. No additional evidence of psychological concern was presented.
 {¶ 13} At the conclusion of the trial, the jury found Markland guilty as charged, and a judgment of conviction was entered. The trial court sentenced Markland to life in prison on the rape count, with eligibility for parole after ten years, and five years on the gross sexual imposition count, to be served concurrently.
 {¶ 14} Markland has filed a timely notice of appeal from this conviction and sentence, and he assigns the following errors for our review:
 {¶ 15} I. "THE JURY'S VERDICTS CONVICTING APPELLANT OF RAPE AND GROSS SEXUAL IMPOSITION WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 16} II. "THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE MINOR ACCUSOR [sic] WAS COMPETENT TO TESTIFY."
 {¶ 17} Upon review, we find that Markland's arguments lack merit. Therefore, the judgment of the trial court will be affirmed.
 I *Page 6 {¶ 18} In his first assignment of error, Markland contends that the verdict is against the manifest weight of the evidence, and, therefore, should be reversed.
 {¶ 19} Markland was convicted of one count of rape of a minor under thirteen years of age, in violation of R.C. 2907.02(A)(1)(b), and one count of gross sexual imposition of a minor under thirteen years of age, in violation of R.C. 2907.05(A)(4). R.C. 2907.02(A)(1)(b) reads:
 {¶ 20} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 21} "* * *
 {¶ 22} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 23} R.C. 2907.05(A)(4) provides:
 {¶ 24} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 25} "* * *
 {¶ 26} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 27} When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine *Page 7 
whether, in resolving conflicts in the evidence, the trier of fact `clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"State v. Adrian, 168 Ohio App.3d 300, 2006-Ohio-4143, 859 N.E.2d 1007, at ¶ 6, quoting State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. Essentially, a reviewing court "sits as a `thirteenth juror' and makes its own independent review of the evidence and inferences derived therefrom, and assesses and weighs the credibility of each witness's testimony." Hagel, Ohio's Criminal Practice and Procedure (2006-07) 796, Section 41.207. However, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, 1997 WL 476684, at *4. Only in exceptional circumstances should a judgment be reversed as being against the manifest weight of the evidence. State v. Parker, Montgomery App. No. 18926, 2002-Ohio-3920, at ¶ 70 (citation omitted).
 {¶ 28} Here, the facts clearly demonstrate that J.A. was under the age of ten at the time the offense occurred. Furthermore, as we stated above, J.A. testified at trial that Markland engaged in inappropriate touching of her vaginal area, including digital *Page 8 
penetration of her vagina, on several occasions when she and her younger sister spent the night at Markland's house. This accusation was confirmed by J.A.'s mother, who testified that her daughter disclosed to her what had been taking place at Markland's home in February 2006, after asking whether J.A. would like to visit Markland. Chief Lee Harmon of the Covington Police Department likewise confirmed J.A.'s statements, having learned of the offense through an interview of J.A.'s mother on February 10, 2006, and an interview of J.A. on the following day. Nevertheless, Markland repeatedly denies the allegations, asserting that J.A. is acting out because he confronted her about the missing wedding ring. This Court has held previously that "`the jury [is] in the best position to weigh the evidence, and [is] free to believe all, some or none of the victim's testimony.'" State v. Reese, Montgomery App. No. 21258, 2006-Ohio-4404, at ¶ 25 (citations omitted). Therefore, it is reasonable for the jury to have found J.A.'s testimony more credible than the defendant's.
 {¶ 29} In addition, the jury heard the testimony of Dr. Ralph Hicks, who explained the lack of physical evidence in cases such as the instant one. Markland directs this Court's attention to Dr. Hicks' statistical finding that 12 percent of sexual abuse allegations are meritless. However, it is not unreasonable for the jury to acknowledge the converse result — that 88 percent of the time, allegations of sexual abuse are legitimate. A similar conclusion can be made regarding Dr. Hicks' psychological statistic that in approximately 50 percent of abuse cases, psychological counseling will be necessary. Simply because J.A. showed only minimal signs of trauma did not prohibit the jury from determining that sexual abuse had occurred. We further find no merit in Markland's argument that J.A.'s accusations were in response to the dissolution *Page 9 
between her mother and father, where Dr. Hicks testified that the probability of such false allegations are low, especially in younger children.
 {¶ 30} Finally, Officer Geramy Mullenix testified that Markland made incriminating statements during the book-in procedure on February 24, 2006, which he thereafter conveyed to the Covington Police Department. This Court admits that there is some confusion surrounding when Officer Mullenix's report was faxed to and received by the Covington Police. However, such confusion invites a determination of credibility. As we stated above, a jury primarily carries the burden of assessing credibility. See State v. DeHass (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212; State v. Jones, (1996) 114 Ohio App.3d 306,318, 683 N.E.2d 87.
 {¶ 31} In light of this evidence, we cannot say that the trier of fact clearly lost its way and created a manifest miscarriage of justice in this matter. Accordingly, Markland's first assignment of error is overruled.
 II {¶ 32} Under his second assignment of error, Markland contends that the trial court abused its discretion in finding J.A. competent to testify at trial. Preliminarily, we note that no timely objections were made regarding the court's competency determination; therefore, this claim of error is governed by the plain error standard of review. SeeState v. House (Dec. 17, 1993), Montgomery App. No. 13642,1993 WL 518690, at *1. "A finding of plain error should only be made under exceptional circumstances to prevent a manifest miscarriage of justice." Id. at *3, citing State v. Long (1978), 53 Ohio St.2d 91, 7 O.O.3d 178,372 N.E.2d 804, paragraph three of the *Page 10 
syllabus.
 {¶ 33} Evid.R. 601(A) provides that "[e]very person is competent to be a witness except * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truthfully." InState v. Frazier (1991), 61 Ohio St.3d 247, 574 N.E.2d 483, the Supreme Court of Ohio set the standard for competency guidelines of child witnesses:
 {¶ 34} "In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." Id. at syllabus. A general inquiry, however, is sufficient for a trial court to determine whether a child can perceive, recollect, and truthfully relate events. State v. Brooks (Oct. 26, 2001), Montgomery App. No. 18502, 2001 WL 1295285, at *2, citing State v. McNeill (1998),83 Ohio St.3d 438, 700 N.E.2d 596.
 {¶ 35} Here, the trial court conducted a competency voir dire examination on November 9, 2006, during which he asked J.A. a series of questions to ascertain whether she could receive accurate impressions of fact, recall events correctly, and understand the obligation to tell the truth. In response to the court's questions, J.A. stated her name, her age, the date, where she attended school, the names of her teachers, the name of her school's mascot, what time the school day begins, what time *Page 11 
she goes to bed each night, what she did for her ninth birthday, what she did for her eighth birthday, where she and her family went on vacation in 2006, where she went on vacation the year of her seventh birthday, and what costumes she wore for Halloween in 2006 and 2005. When asked if she knew what truth is, J.A. responded that it is something that is not a lie; when asked what a lie is, J.A. stated that it is something that is not true. She further acknowledged that she would get in trouble if she told a lie, although she also provided that she seldom tells lies. At the trial, the court elicited yet another example of whether J.A. understood the difference between truth and lies, asking her if it would be the truth or a lie if he told her that he was wearing a blue tie, when in fact his tie was red. J.A. answered that it would be a lie.
 {¶ 36} Markland does not dispute any of the answers J.A. provided during this competency examination. Instead, he argues that the record does not demonstrate that there was independent corroboration that her responses were true or accurate. "There is no requirement, however, that the court have corroborating evidence in order to be convinced of the accuracy of the child's recollection of past events." State v.Glass, Cuyahoga App. No. 81607, 2003-Ohio-879, at ¶ 41. As the Supreme Court of Ohio set forth in Frazier, the determination of competency is within the sound discretion of the trial judge because he or she is in the best position "to observe the child's appearance, his or her manner of responding to the questions, general demeanor and any indicia of ability to relate the facts accurately and truthfully."61 Ohio St.3d at 251.
 {¶ 37} Accordingly, we find that the trial court's conduct did not constitute a manifest miscarriage of justice, where it properly determined that J.A. was competent to testify at trial. Markland's second assignment of error is overruled. *Page 12 
 {¶ 38} Having overruled each of Markland's assignments of error, the judgment of the trial court is affirmed.
GRADY, J., and GLASSER, J., concur. *Page 1