OPINION
Guy Schofield appeals from his conviction in the Greene County Common Pleas Court of Obstructing Official Business in violation of R.C.2921.31(A). Schofield was acquitted by the jury of one count of felonious assault on a police officer.
The facts underlying this appeal were controverted and are as follows:
In the early morning hours of October 30, 2000, volunteer fireman, Robert Edingfield, was dispatched on the report of a house fire on Mason Road in Wilberforce, Ohio. Upon arriving at the Mason Road location, Edingfield parked his pick-up truck in a makeshift driveway. Edingfield saw smoke coming from the south side of the small house and a man and a woman leaving the residence.
Edingfield went around to the north side of the house where he observed a man attempting to put out an intensive basement fire with a garden hose. Because of the intensity of the fire and smoke, Edingfield asked the man to get away from the house. Edingfield said the man refused and became very belligerent saying he didn't want his house to burn down. (Tr. 43).
Edingfield assured the man that fire trucks were on the way and eventually the man handed him the garden hose and walked a short distance from the house. Edingfield identified that man as Dale Lemon, the owner of the house. (Tr. 63). Edingfield said fire trucks arrived within a few minutes and the fire was fought for nearly two hours. Edingfield's truck did not restrict the fire trucks from access to the Lemon's home.
Deputy Brian Seifert of the Greene County Sheriff's Office arrived on the fire scene just before Edingfield. He checked the Lemon house and determined that everyone was out of the house. Seifert then encountered Dale Lemon's son, Ryan, who was running around the yard stating in an excited state that he had burnt the house down. Seifert observed Dale Lemon trying to douse the fire with a garden hose while his wife, daughter, Shelly, was trying to restrain Lemon from getting too close to the fire and smoke.
Seifert helped the fireman drag the hose around to the back of the house. Seifert observed Ryan, Dale, Shelly Lemon and Schofield watch the fireman fight the fire. Seifert said Dale Lemon was visibly upset with the fireman's progress and heard him state "I'm going to get this other fire truck down here in the yard so they can put this fire out." (Tr. 260).
Seifert said he asked Shelly Lemon to control her father and she said, "don't worry we are Maryland State Troopers." Shortly thereafter Seifert said a fireman in the basement hit a window with a high pressure hose and glass flew into the yard. Seifert said everyone began moving back toward the street. Seifert said he again heard Dale Lemon say the truck needed to be moved and he saw Dale get in Edingfield's truck. Seifert approached the truck and told Lemon "You need to get out of this car. Stay out of the Firefighters' cars and move back to the street." (Tr. 266).
Seifert said Lemon got out of the truck and swung his fist at him which Seifert ducked. Just as that happened, Seifert said that Guy Schofield hit him on the head with a metal flashlight. Seifert said he was knocked into an almost unconscious state. Seifert said that Schofield then got him in a choke hold called a Lateral Vascular Neck Restraint which he recognized as one he learned in the police academy. Seifert said he was able to get free of the choke hold and he pulled out his ASP baton and told Schofield "to get on the ground, you're under arrest." (Tr. 272). Seifert said that when Schofield ignored his order and moved toward him, he struck Schofield in the thigh four or five times with the baton. (Tr. 274). When Schofield continued to resist, Seifert called for assistance from Officer John Martin who helped him subdue Schofield.
Deputy John Martin, a 20 year veteran of the Greene County Sheriff's Office, orroborated much of Deputy Seifert's testimony. Martin testified that he saw Dale Lemon become very upset with the possibility that Edingfield's truck was blocking the fire trucks access to the fire. Martin testified that he told Deputy Seifert to tell Dale Lemon to get out of Edingfield's truck. Martin said a few moments later he saw Schofield choking Deputy Seifert. He said he also saw Schofield hit Seifert over the head twice with a red Maglite flashlight. (Tr. 88).
Martin said he saw Officer Seifert free himself from Schofield's hold and then order Schofield to get on the ground. Martin said when Schofield resisted, Seifert struck Schofield four or five times on the back of Schofield's leg with his baton. (Tr. 90). Martin said he felt the situation was getting out of hand, so he called for assistance from other officers on his police radio. (Tr. 94).
Schofield told a different version of the events leading to his arrest. Schofield said Officer Seifert got visibly angry when he saw Dale Lemon get into Officer Edingfield's truck. He said he heard Seifert threaten to lock up Dale Lemon if he ever got into an official vehicle again. (Tr. 482). He said he saw Seifert hit Dale Lemon in the head with a flashlight. He said he told Seifert to stop and told him about Lemon's recent brain surgery.
Schofield said Seifert hit Lemon again in the shoulder and as he was about to hit him again, he intervened. Schofield said he shoved Seifert away and put his right hand on Seifert's chest. He said he then blocked Seifert's attempt to hit him with a flashlight with his arm. Photos corroborated an injury to Schofield's arm. (Tr. 486).
Schofield said he then tried to calm Officer Seifert down and pinned his arm down. Schofield said Seifert then struck him repeatedly on the back of his thigh with the baton Seifert was carrying. Appellant said he continually asked Seifert why he was hitting him, and Seifert offered no explanation. (Tr. 492-493). Appellant said he deflected some of the intended hits with his flashlight. (Tr. 493). Finally, Seifert told appellant to lean against the Blazer, appellant complied, and he was arrested shortly thereafter. (Tr. 493). Schofield testified he was a retired Maryland State Trooper who had served over twenty years and had only recently retired because of medical problems. (Tr. 468-469). Schofield denied hitting Officer Seifert and said he only grabbed Seifert to prevent him from injuring Dale Lemon who had recent brain surgery. He denied putting Seifert in a neck hold.
Schofield's fiancé, Shelly Lemon, testified that she grew up in Greene County. After graduating from Xenia High School, Shelly served as a Linguist Specialist with the U.S. Air Force and then served as a Maryland State Trooper since 1994. Shelly testified that during the fire fighting she was continually back and forth checking her children who she had placed in her Blazer across the lane from the house. (Tr. 562).In his sole assignment of error, Schofield contends his conviction was against the manifest weight of the evidence. He argues that his evidence demonstrated that Officer Seifert was out of control at the fire scene and that he stepped into the altercation between Dale Lemon and Seifert to prevent Seifert from injuring Lemon who had recent brain surgery.
In support of his argument, Schofield notes the jury apparently did not believe Officers Seifert and Martin's testimony that he struck Seifert with the red maglite flashlight because the jury acquitted him of that more serious charge. Also he notes the jury apparently had difficulty believing the officers' testimony that Shelly Lemon obstructed their official business of fighting the fire as the jury acquitted her of those charges. Also Seifert argues the jury's verdict against him is suspect because the jury acquitted Dale Lemon of one count of assault and one count of obstructing official business although they convicted him of the charge of assaulting Officer Seifert.
In short, Schofield argues that the jury must have found some of the testimony of the police officers untrue as there is no other reasonable explanation for some of the acquittal verdicts. Also Schofield argues that photographs taken of the Lemons and himself depict that they were hit with Officer Seifert's baton despite his protestations to the contrary.
Finally, he argues that his recent surgery and that of Dale Lemon's make it highly unlikely they would act as the State suggested they did at the fire scene.
Schofield argues that the evidence presented by the State was "fatally lacking in its capacity to persuade" and thus his conviction should be reversed by this court.
When deciding whether a conviction is against the weight of the evidence, the reviewing court must review the entire record, weigh the evidence and all reasonable inferences therefrom, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice so that the conviction must be reversed and a new trial ordered. State v. Martin (1983),20 Ohio App.3d 172, 175; see also State v. Otten (1986),33 Ohio App.3d 339, 340, State v. Assad (1992), 83 Ohio App.3d 114, 117. The appellate court must consider not only the sufficiency of the evidence, but also the believability of the evidence. Accordingly, the court must look not only at the amount of evidence presented, but also at its capacity to persuade. State v. Jones (1996), 114 Ohio App.3d 306,324. In effect, the appellate court sits as a "thirteenth juror," and it may thus disagree with the fact finder's resolution of the conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
The State argues that the evidence was not against the manifest weight of the evidence merely because the defendant, Schofield, was acquitted of the felonious assault charge, and other defendants were acquitted of other charges.
In State v. Lovejoy (1997), 79 Ohio St.3d 440, the Ohio Supreme Court held that the several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count.
It is fundamental that the jury is in the best position to evaluate the credibility of witnesses. They are free, of course, to believe some but not all of the testimony of a witness. The circumstances leading to the defendant's arrest was emotionally charged. Witnesses saw and heard different things. The jury may have acquitted the defendant of the felonious assault charge because they believe the flashlight allegedly wielded by the defendant was not a deadly weapon as defined by statute. The jury certainly could have found from the evidence presented that Schofield obstructed the official business of the firemen and police summoned to the fire. Accordingly, we find from our review of the evidence that the verdict was not against the manifest weight of the evidence. The assignment of error is overruled.
The judgment of the trial court is Affirmed.
FAIN, J., and YOUNG, J., concur.