OPINION
Appellant Brant Bryant appeals his conviction for aggravated robbery from the Stark County Court of Common Pleas. The following facts give rise to this appeal.
On May 10, 2001, James McGraw went to an apartment building located on Cleveland Avenue in the City of Canton. McGraw, an alcoholic for twenty-five years, took beer with him and planned to meet Shif Alfa, his girlfriend's uncle. McGraw often would sit outside the front entrance to the apartment and drink beer with Alfa.
However, on this particular date, when McGraw arrived Alfa was not present and McGraw sat outside the front entrance of the apartment and drank with Donna Wilson, appellant's co-defendant. Wilson shared an apartment with appellant in the apartment building. McGraw knew both appellant and Wilson from previous visits to the building. While McGraw drank with Wilson, appellant eventually joined them. Some time thereafter, a resident of the apartment building, Ceil Scott, found appellant lying on the porch in a pool of blood. McGraw's head was bloody and his hair was matted. Scott called 911 and propped McGraw up against the wall in the entrance of the building.
The paramedics transported McGraw to Aultman Hospital Emergency Room. The next event McGraw remembered was awakening at the hospital. Dr. John Zimmerman cleaned the wound and observed appellant for approximately nine hours before discharging him from the hospital. At the hospital, McGraw realized his wallet, watch, eyeglasses and a few dollars were missing from his pocket.
After his release from the hospital, McGraw's condition worsened. Subsequently, on May 16, 2001, McGraw's sister took him to the V.A. hospital in Cleveland where surgery was performed to relieve the pressure which resulted from a blood clot to the brain. Due to his head injury, McGraw has an unsteady gait and walks with a cane. Following McGraw's admittance to the V.A. hospital, Sergeant Michael Rukavina began investigating the origin of McGraw's head injuries. Rukavina developed appellant and his co-defendant, Wilson, as suspects. Appellant gave a voluntary statement to Rukavina, which conflicted with other evidence obtained in the investigation.
Thereafter, appellant was arrested by Canton Police Officers and charged with complicity to commit aggravated robbery. After conducting a preliminary hearing, the Canton Municipal Court found probable cause to bind over appellant's case to the Stark County Grand Jury. On June 28, 2001, the grand jury indicted appellant and his co-defendant each with one count of complicity to aggravated robbery. Appellant entered a plea of not guilty at his arraignment. This matter proceeded to trial on August 27, 2001. Following deliberations, the jury found appellant guilty. The trial court sentenced appellant and Co-defendant Wilson each to seven year determinate prison terms.
Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 "I. APPELLANT WAS DENIED HE (SIC) IS (SIC) CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.
 II. APPELLANT'S CONVICTION ON ONE COUNT AGGRAVATED ROBBERY IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I
In his first assignment of error, appellant contends defense counsel was ineffective when he failed to object to Dr. McQuarrie's testimony as to his personal belief regarding McGraw's statements to hospital personnel that he had been hit on the back of the head. We disagree.
A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668;State v. Bradley (1989), 42 Ohio St.3d 136.
In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable professional assistance. Id.
In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." Statev. Carter, 72 Ohio St.3d 545, 558, 1995-Ohio-104, citing Lockhart v.Fretwell (1993), 506 U.S. 364, 370. It is based upon this standard that we review appellant's first assignment of error.
The first statement occurred during the direct examination of Dr. McQuarrie by the state. This testimony is as follows:
 "Q. Is there a difference in a person's ability to recall when they are on alcohol and then when they have sobered up?
 A. Of course there is. Alcohol is an anesthetic. That's when you go to medical school you study it in the section of pharmacology where you study anesthetics.
 Q. So when he was in the hospital relating events, you felt that, that they were, ah, reliable, his recollections at that point were reliable?
A. Ah, yes. I do.
 Q. At any, during, during this treatment time was there a time when, ah, it was noted that Mr. McGraw had short-term memory difficulties?
 A. No. No, until the blood clot got substantially bigger, and the brain swelling underneath it, ah, he had a good neurological examination." Tr. Vol. II at 105-106.
In another exchange between the prosecutor and Dr. McQuarrie, Dr. McQuarrie stated that he did not believe that McGraw's injuries were consistent with having fallen, but instead, he believed they were caused by McGraw being hit on the back of the head. This testimony is as follows:
 "Q. And in this case, not — I guess just a reasonable certainty, what do you believe might have happened to cause this severe of an injury in this case, other than just a fall?
 A. I think everyone in the hospital believed Mr. McGraw when he said he'd been hit in the back of the head. I don't know if he was right about a beer bottle, but we felt he'd been struck hard in the back of the head, so — initially, he had a relative said she doubted that. But he tended to corroborate his version. Because he had blood clots inside the head, he had to have been hit quite hard. He couldn't just fall out of his chair." Tr. Vol. II at 108-109.
At the close of her questioning, the prosecutor asked Dr. McQuarrie if he found McGraw to be credible in the context of his diagnosis and treatment. However, the trial court sustained defense counsel's objection because the issue had been covered by the witness. Tr. Vol. II at 115.
The final statement appellant challenges occurred during the state's closing argument when the prosecutor stated:
 "[Dr. McQuarrie] told you that he believed with reasonable scientific certainty that the injury definitely came from more than just a fall from a chair. And he stated that it was consistent with being over, hit over the head with a blunt instrument and possibly then falling forward and getting a front injury.
He told you that Kevin [McGraw] was reliable in his reporting when he was off the alcohol. And that before his injury had gotten worse and he got short-term memory loss, he was reliable in relating what he recalled of being hit over the head.
And he was able to explain to you with scientific information about kinetics, about why he's so certain about his decision and about his testimony here today, about why it took a severe blow and more than just a fall off a chair." Tr. Vol. II at 162.
Appellant maintains that defense counsel's representation fell below an objective standard of reasonableness when he failed to object to Dr. McQuarrie's testimony that McGraw was telling the truth when he said he was hit on the head. In support of this assignment of error, appellant cites the cases of State v. Jones (1996), 114 Ohio App.3d 306 and Statev. Dale (July 14, 1992), Greene App. No. 91-CA-25. Both of these cases address the issue of an expert commenting on the veracity of a child declarant in child sexual abuse cases. The courts of appeals concluded in both Jones and Dale that failure to object to a doctor's testimony regarding the veracity of the victim's statement falls below an objective standard of reasonable representation.
We find the case sub judice distinguishable from the cases cited by appellant. First, the prosecutor asked Dr. McQuarrie, to a reasonable degree of medical certainty, whether McGraw suffered a blow to the back of the head or a simple fall. Dr. McGraw explained why McGraw's injuries were consistent with having been hit on the back of the head. Although Dr. McQuarrie's comment that everyone at the hospital believed McGraw's statement that he was hit over the head may have been inappropriate, it was merely an isolated statement which was not unduly prejudicial to appellant. Further, Dr. McQuarrie had sufficient evidence to support his testimony that appellant received his injuries from a blow to the head and not a fall. Dr. McQuarrie's conclusions were not based solely on what appellant believed to be the cause of his injuries. Instead, physical evidence and the severity of appellant's injuries supported this conclusion.
Accordingly, counsel's performance did not fall below an objective standard of reasonable representation involving a substantial violation of any of his essential duties to appellant when he failed to object to the prosecutor's statements and Dr. McQuarrie's testimony regarding the cause of appellant's injuries.
Appellant's first assignment of error is overruled.
 II
Appellant maintains, in his second assignment of error, that his conviction for aggravated robbery is against the manifest weight and sufficiency of the evidence. We disagree.
On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
Appellant first contends there is no evidence that a theft offense occurred because Aultman Hospital returned the items McGraw alleged were stolen from him. Second, appellant maintains there is no evidence that appellant inflicted or attempted to inflict serious physical harm on McGraw. Appellant maintains an intervening injury caused the subdural haematoma. Finally, appellant argues McGraw has not identified any alleged perpetrator of a violent act against him and his version of how he was injured is inconsistent.
We have reviewed the record in this matter and find the jury's verdict is not against the manifest weight or sufficiency of the evidence. The state presented a timetable of events, to the jury, that placed appellant and his co-defendant at the scene at the exact time McGraw suffered his injuries. Ceil Scott testified that she saw appellant, at the scene, with the co-defendant, at the exact time McGraw suffered his injuries. Scott observed that McGraw was sitting on a chair. However, when she looked out her window before leaving her apartment she observed the chair was empty and saw Co-defendant Wilson running across Cleveland Avenue and appellant trotting across Cleveland Avenue. When Scott exited her apartment, she saw McGraw lying on the ground in a pool of blood.
Also, Shawn Brockup noticed appellant, Co-defendant Wilson and McGraw at the front of the apartment building as he exited it to go to his truck. Upon returning from his truck, a few minutes later, Brockup observed McGraw lying in a pool of blood and appellant and Co-defendant Wilson were gone. Further, Dr. McQuarrie testified that the injuries suffered by appellant could not have been caused by falling off a chair. Dr. McQuarrie stated that a lot of kinetic energy caused McGraw's head injuries. Also, McGraw's injuries were consistent with the three to five day timetable it takes for a blood clot to liquify. Finally, the only item returned to McGraw, by Aultman Hospital, was his wallet. McGraw never recovered his money, glasses or keys.
Appellant's conviction for aggravated robbery is supported by the manifest weight and sufficiency of the evidence.
Appellant's second assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: WISE, J. BOGGINS, J., concurs. HOFFMAN, P.J., concurs separately.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Costs assessed to appellant.