OPINION
{¶ 1} Appellant Liangwu Yin appeals his conviction, in the Alliance Municipal Court, for one count of petty theft. The following facts give rise to this appeal.
 {¶ 2} On January 7, 2004, Officer Lloyd Sampson, from the Alliance Police Department, arrested appellant for petty theft. The incident occurred at the Marc's Discount Store in Alliance. According to Melanie Medure, an employee in the security field, she observed appellant repeatedly hunch and squat, in the aisles of the store, for extended periods of time. Ms. Medure also observed appellant place a product price sticker, on his finger, and then place the sticker on the shopping cart. Ms. Medure followed appellant through the store as he removed and/or switched price stickers from retail items. Eventually, appellant moved to the other end of the store, from where he began shopping, and removed from his cart those items from which he had removed the price stickers.
 {¶ 3} Thereafter, appellant proceeded to the check-out line where he paid, for the retail items, with the price stickers he had placed upon them. Appellant switched the Dr. Scholl's item from $9.96 to $3.89; the corkscrew from $1.49 to 2/.99¢; and a pair of gloves from $4.99 to $2.99. Prior to appellant leaving the store, Ms. Medure asked another Marc's employee, Julie Griffin, to observe her as she stopped appellant. Subsequently, Ms. Medure stopped appellant and asked him to return to the store with her. At Ms. Medure's request, Julie Griffin went back to the stationery department, of the store, where she retrieved the retail items that appellant had removed from his shopping cart.
 {¶ 4} Ms. Medure notified the Alliance Police Department of an alleged theft offense. Officer Sampson arrested appellant based upon Ms. Medure's written report of the incident. Officer Sampson requested a photocopy of the actual items involved in the incident. Appellant posted bond and appeared for his arraignment on January 9, 2004. On March 5, 2004, appellant filed a motion to dismiss on the basis that the complaint was deficient and violated his constitutional rights. Appellant withdrew the motion on May 18, 2004. This matter proceeded to a jury trial on July 1, 2004. Following deliberations, the jury found appellant guilty as charged. The trial court sentenced appellant to three days imprisonment.
 {¶ 5} Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 6} "I. The trial court erred in entering a judgment of conviction when the only physical evidence of theft was not entered into evidence.
 {¶ 7} "II. The trial court erred by admitting lay opinion evidence about the forensic sociology of theft.
 {¶ 8} "III. The trial court erred in admitting lay opinion evidence of the effect of petty theft on retail stores.
 {¶ 9} "IV. The trial court erred in admitting lay opinion testimony on the sophistication and skill of persons accused of the defendant's charged offense.
 {¶ 10} "V. The trial court erred in permitting counsel for the prosecution to express his personal belief in the credibility of the state's witnesses.
 {¶ 11} "VI. The defendant's right to effective assistance of counsel was violated by trial counsel's failure to object to these above-discussed errors."
 I {¶ 12} In his First Assignment of Error, appellant maintains the trial court erred when it found him guilty of the petty theft offense because the only physical evidence of theft was not entered, into evidence, at trial. We disagree.
 {¶ 13} This argument refers to the fact that the state did not introduce, at trial, any of the retail items displaying the replaced price stickers. Instead, the state introduced photocopies of these items. This assignment of error essentially alleges his conviction is against the manifest weight and sufficiency of the evidence due to the state's failure to introduce the retail items constituting the petty theft offense.
 {¶ 14} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175. See also, State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 15} In support of his argument, appellant cites the following cases: State v. Harris (June 8, 1992), Butler App. No. CA90-11-222; Cityof Cleveland v. Ueberschaar (Mar. 8, 1990), Cuyahoga App. No. 58047;State v. Jackson (Jan. 25, 1990), Cuyahoga App. No. 56494; and State v.Green (Jan. 27, 1977), Franklin App. No. 76AP-507. Appellant maintains these cases stand for the proposition that allegedly tampered-with retail items must be introduced into evidence, at trial, in order to sustain a conviction. We have reviewed these cases and find they do not specifically hold that the retail items involved in the offense must be introduced at trial. In the Jackson, Harris and Green cases, the issues on appeal did not pertain to the introduction of evidence at trial. In the Ueberschaar case, a price sticker switching case, the Eighth District Court of Appeals held as follows:
 {¶ 16} "* * * [A]t the start of the trial the prosecution amended the complaint to exclude the price switching of the books that were missing stickers. As Uebershaar was not tried and convicted of switching the prices on these books, which also were never admitted into evidence, he cannot now argue that his right to a fair trial was affected by the existence or nonexistence of these things." Ueberschaar at 3-4.
 {¶ 17} The Ueberschaar decision is also not persuasive because the City of Cleveland amended the complaint so the defendant was not charged as to the books missing stickers. However, as in the other three cases cited above, the defendant was convicted based upon evidence introduced at trial. Appellant concludes these cases stand for the proposition that the retail items must be submitted as evidence at trial.
 {¶ 18} We disagree with this conclusion. In the case sub judice, the state introduced photocopies of the retail items at issue. The state also introduced the testimony of Ms. Medure, who observed appellant as he switched the price stickers. Ms. Medure testified, at trial, as follows:
 {¶ 19} "A. * * * And there should be no reason to remove a sticker from an item whatsoever. * * * So the sticker was removed from the showerhead. Then the gentleman began — Mr. Yin began to remove the sticker from the gloves and that sticker went on to the gloves, which brought the gloves from 4.99 to 2.99. And all of our close-out stickers have blue bands on them. And our other, outside of Aisle 1, our stickers are white and it says Marc's in red. So he took the blue line sticker off the showerhead and put in on the gloves from our Aisle 1. * * *
 {¶ 20} "Then he proceeded to the rear, which rear would be like where our rugs and stuff are, the rear of the store, in line with the Aisle 1 section, and that's when he began to remove the 3.89 sticker off the Dr. Scholl's. And, there again, like I said, I'm still keeping an eye on this. This hasn't moved yet. And, you know, sometimes when it's stuck to paper, it's a little more difficult so you've really got to work at it. So there was some time and effort put into that 3.89 sticker. Then removed the 3.89 sticker and placed it on the Dr. Scholl's insteps over top of the 9.96 sticker. Then took the 2.99 very carefully off the handle of the cart and placed it over the 1.49 sticker on the corkscrew.
 {¶ 21} "* * * And then he moved to the far end of the store, the complete opposite end of the store in the stationary (sic) aisle, I'm following along behind him, he takes the showerhead that he removed the sticker from and the Dr. Scholl's medication and he ditches them in the stationary (sic) aisle, proceeds back out of the stationary (sic) aisle, up the last aisle and to register eight and paid for his purchase, his stickers that were on it." Tr. July 1, 2004, at 59-60.
 {¶ 22} We conclude the photocopies of the retail items as well as Ms. Medure's testimony provided the jury with sufficient evidence to support appellant's conviction. The state presented eyewitness testimony that was corroborated by photocopies that proved the elements of petty theft. Moreover, the jury had the opportunity to observe Ms. Medure and appellant as they testified. Appellant provided no explanation as to how the price stickers were switched on the retail items he purchased. Based upon this evidence, we conclude the jury's verdict is not against the manifest weight or sufficiency of the evidence.
 {¶ 23} The Eighth District Court of Appeals reached the same conclusion in City of Middleburg Heights v. Feltes, Cuyahoga App. No. 81776, 2003-Ohio-3248. In Feltes, defendant challenged her conviction for petty theft on the basis that it was against the manifest weight and sufficiency of the evidence. Id. at ¶ 20. The court of appeals concluded the defendant's conviction was not against the manifest weight or sufficiency of the evidence relying upon eyewitness testimony and photographs introduced at trial. ¶ 24.
 {¶ 24} Accordingly, we overrule appellant's First Assignment of Error.
 II, III, IV {¶ 25} We will address appellant's Second, Third and Fourth Assignments of Error simultaneously as all three concern whether certain testimony, presented at trial, violated Evid.R. 701 and Evid.R. 702. For the following reasons, we find no violation of these rules of evidence.
 {¶ 26} We begin our review of these assignments of error by noting that defense counsel did not object to the admission of any of the statements that are now being challenged on appeal. As such, we must review these assignments of error under a plain error analysis. Crim.R. 52(B) provides:
 {¶ 27} "(B) Plain Error. Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 {¶ 28} Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus; State v. Cooperrider (1983),4 Ohio St.3d 226, 227.
 {¶ 29} Further, the challenged testimony was not presented by experts. Therefore, we do not have to consider Evid.R. 702 in addressing these assignments of error. Instead, we find the applicable rule of evidence to be Evid.R. 701. This rule provides as follows:
 {¶ 30} "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.
 {¶ 31} In Lee v. Baldwin (1987), 35 Ohio App.3d 47, 49, the First District Court of Appeals explained that lay testimony must be, "(1) `rationally based on the perception of the witness,' i.e., the witness must have firsthand knowledge of the subject of his testimony and the opinion must be one that a rational person would form on the basis of the observed facts; and (2) `helpful,' i.e., it must aid the trier of fact in understanding the testimony of the witness or in determining a fact in issue."
 {¶ 32} In his Second Assignment of Error, appellant challenges the following testimony of Officer Sampson:
 {¶ 33} "Q. Now, in your experience with petty theft things, is there — is it limited to young people, old people, rich people, poor people; I mean, who is it that does these crimes?
 {¶ 34} "A. Absolutely not. It's not limited to anybody. All spectrums of life do this.
 {¶ 35} "Q. On other occasions when you've arrested people for petty theft, did you, upon checking into their pockets and booking them, then find that they had money sufficient to pay for what they had stolen?
 {¶ 36} "A. Yes, sir.
 {¶ 37} "Q. In fact, it's quite common, isn't it?
 {¶ 38} "A. Yes, sir.
 {¶ 39} "Q. Isn't petty theft a sickness as opposed to a — if in your experience you found it out that people can well afford to steal the items that they've stolen, but they do it any way?
 {¶ 40} "A. Very often that is true." Tr. July 1, 2004, at 43-44.
 {¶ 41} We do not find, under a plain error analysis, that this testimony violated Evid.R. 701. A review of the transcript reveals that on cross-examination of Officer Sampson, defense counsel specifically made a point that appellant had sufficient money, in his wallet, to cover the cost of the retail items in question and also had enough money to post bond the same day he was arrested. Id. at 42. Thus, the state's questions on re-direct were in response to the questions defense counsel asked Officer Sampson on cross-examination. Further, the answers provided by Officer Sampson complied with Evid.R. 701 in that they were rationally based upon his perception of appellant and helpful to a clear understanding of his testimony or a fact in issue (i.e. why appellant switched the price stickers.)
 {¶ 42} In his Third Assignment of Error, appellant challenges the testimony of Ms. Medure regarding her statement that petty theft is a serious problem for retail markets. Appellant claims this testimony was inadmissible under either Evid.R. 701 or Evid.R. 702. As noted above, Evid.R. 702 is not applicable because Ms. Medure did not testify as an expert. Thus, we will consider this argument in the context of Evid.R. 701.
 {¶ 43} The challenged testimony of Ms. Medure provides as follows:
 {¶ 44} "Q. "* * * Now, your employment with Marc's as a security person, what is the purpose of that employment?
 {¶ 45} "A. The purpose of it is to stop losses in the company.
 {¶ 46} "Q. And losses by what?
 {¶ 47} "A. By shoplifting, employee error. We investigate shortages, overages. We have all kind — lottery shortages. Various losses within the company. It's our duty to correct them.
 {¶ 48} "Q. So is petty theft a serious problem for the retail markets?
 {¶ 49} "A. Yes, it is.
 {¶ 50} "Q. And that's a principal part of your employment is to be aware of that?
 {¶ 51} "A. Correct." Id. at 56-57.
 {¶ 52} Clearly, appellant's comment that petty theft is a serious problem was made in the context of her job description. Appellant is employed in loss prevention because petty theft is a serious problem for the retail market. These statements are admissible under Evid.R. 701 because appellant has firsthand knowledge of the subject of loss prevention since she is employed as a security person and her opinion is one that a rational person would form on the basis of observed facts. Also, this statement was helpful for the jury to understand her testimony as to why she initially began watching appellant and in determining whether appellant actually switched price stickers.
 {¶ 53} In his Fourth Assignment of Error, appellant again challenges the testimony of Ms. Medure concerning her statement that one has to be sophisticated to switch price tags. In support of this assignment of error, appellant refers to the following testimony:
 {¶ 54} "Q. "* * * And what were the two items that were — that he removed the items from?
 {¶ 55} "A. This sticker, from a showerhead in Aisle 1 and you can see the blue band, it's an Aisle 1 here. This is in the pharmacy, so if there was a blue band sticker put on this, it would've been questioned at the register, usually. So this has a red and white ticket. * * *
"* * *
 {¶ 56} "Q. So the two items that were put in the stationery area were the two — would've been the original items that he took the price tags off of and those are the ones with the blue stickers on them?
 {¶ 57} "A. Correct. * * *
 {¶ 58} "Q. Right. Because that would've been a key to check-out that somebody —
 {¶ 59} "A. Right.
 {¶ 60} "Q. — definitely switched.
 {¶ 61} "A. Right.
 {¶ 62} "Q. So its, somebody had to be sophisticated in what they were doing in doing this, correct?
 {¶ 63} "A. Someone had to know our tickets to know." Id. at 62.
 {¶ 64} The above testimony reveals that Ms. Medure did not make the statement that appellant challenges on appeal. Rather, the state asked whether someone had to be sophisticated in order to understand Marc's price sticker system. Ms. Medure merely responded that someone had to understand the store's price sticker system, in order to switch price stickers, and not raise suspicion at the check-out. As such, we find no violation of Evid.R. 701.
 {¶ 65} Appellant's Second, Third and Fourth Assignments of Error are overruled.
 V {¶ 66} Appellant maintains, in his Fifth Assignment of Error, the trial court erred when it permitted the prosecutor to express his personal belief as to the credibility of the state's witnesses. We disagree.
 {¶ 67} Appellant challenges the following statement, made by the prosecutor, during closing argument:
 {¶ 68} "I don't think if you weigh the credibility of any of the witnesses, I think the police officer was truthful, Ms. Medure was truthful, Ms. Griffin was truthful, and you weigh that and the way they presented themselves on the stand with the way that the defendant presented himself." Id. at 114.
 {¶ 69} Defense counsel did not object to the above statement and therefore, we must review this assignment of error under a plain error analysis. Generally, a prosecutor's conduct at trial is not grounds for reversal unless that conduct deprives the defendant of a fair trial.State v. Loza (1994), 71 Ohio St.3d 61, 78, overruled on other grounds. Both the prosecutor and defense have wide latitude during opening and closing arguments; questions as to the propriety of these arguments are generally left to the trial court's discretion. Loza at 78; State v.Brown (1988), 38 Ohio St.3d 305, 317.
 {¶ 70} A closing argument must be reviewed in its entirety to determine whether prejudicial effect occurred. State v. Frazier,73 Ohio St.3d 323, 342, 1995-Ohio-235. The test for prosecutorial misconduct is whether the prosecutor's comments were improper and, if so, whether those remarks prejudicially affected the defendant's substantial rights. State v. Eley, 77 Ohio St.3d 174, 187, 1996-Ohio-323, overruled on other grounds; State v. Lott (1990), 51 Ohio St.3d 160, 165.
 {¶ 71} Upon review of the above statement by the prosecutor, we agree this statement was improper because he improperly vouched for the credibility of Officer Sampson, Ms. Medure and Ms. Griffin. It is well established that a prosecutor may not express a personal belief as to the truthfulness of a witness. State v. Jones (1996), 114 Ohio App.3d 306,315. However, although we find this statement to be improper, we do not conclude the statement prejudicially affected appellant's substantial rights. We believe the jury would have found appellant guilty, beyond a reasonable doubt, absent the prosecutor's comment. Thus, any error that occurred was harmless.
 {¶ 72} Appellant's Fifth Assignment of Error is overruled.
 VI {¶ 73} In his Sixth Assignment of Error, appellant claims he was denied effective assistance of counsel due to defense counsel's failure to object to the above errors. We disagree.
 {¶ 74} A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668;State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 75} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any give case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 76} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558, citing Lockhartv. Fretwell (1993), 506 U.S. 364, 370.
 {¶ 77} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 78} Having found no error in Assignments of Error One through Five, we conclude appellant was not prejudiced by defense counsel's performance. Accordingly, appellant was not denied effective assistance of counsel.
 {¶ 79} Appellant's Sixth Assignment of Error is overruled.
 {¶ 80} For the foregoing reasons, the judgment of the Alliance Municipal Court, Stark County, Ohio, is hereby affirmed.
Wise, J. Farmer, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Alliance Municipal Court, Stark County, Ohio, is affirmed.
Costs assessed to Appellant.