**[Cite as *State v. Barnes*, 2014-Ohio-47.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO

     Plaintiff-Appellee

v.

MICHAEL A. BARNES, JR.

     Defendant-Appellant

Appellate Case No.    25517

Trial Court Case No.   2011-CR-2923

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 10th day of January, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

CANDI S. RAMBO, Atty. Reg. No. 0076627, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}   Defendant-Appellant, Michael A. Barnes, Jr., appeals from his conviction on one count of Gross Sexual Imposition in violation of R.C. 2907.05(A)(4).   Barnes raises five assignments of error arguing that: (1) there is insufficient evidence to support his conviction; (2) his conviction is against the manifest weight of the evidence; (3) the trial court gave an incorrect jury instruction on the weight of direct and circumstantial evidence; (4) the State engaged in prosecutorial misconduct during its closing argument; and (5) he was denied effective assistance of counsel.

{¶ 2}   We conclude that the victim's trial testimony is sufficient evidence to support Barnes's conviction, and that the conviction is not against the manifest weight of the evidence. We further conclude that the trial court's jury instruction on the weight of direct and circumstantial evidence is a correct statement of law and not prejudicially erroneous.   While we conclude that the State made improper comments during its closing argument, Barnes did not object to the comments, and we do not find that they amount to reversible plain error.   Finally, we conclude that Barnes was not denied effective assistance of trial counsel, because he failed to demonstrate that he was prejudiced by his counsel's errors.   Accordingly, the decision of the trial court will be affirmed.

## I.   Facts and Course of Proceedings

{¶ 3}   On November 16, 2011, Michael A. Barnes, Jr. was indicted on one count of Gross Sexual Imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree.   Barnes pled not guilty to the indicted charge, and a jury trial was held on October 30, and 31, 2012.   The

following information was elicited at trial.

**{¶ 4}** In March 2010, Barnes was living with his aunt, D., at her residence in the city of New Lebanon, Montgomery County, Ohio. On March 8, 2010, Barnes interacted with D.'s 11-year-old neighbor, H.S., who lived nearby.

**{¶ 5}** H.S. testified that on March 8, 2010, she and two other children from the neighborhood went to D.'s house and asked Barnes if he wanted to play outside. Barnes accepted the invitation, and they played outside all day in D.'s backyard. When the other two children went home, H.S. had dinner at D.'s house. After dinner, Barnes asked H.S. if she wanted to watch a movie. H.S. and Barnes then watched a movie together on a couch in D.'s living room. D. and her daughter, L., were upstairs while H.S. and Barnes were watching the movie. L.'s three-year-old daughter, M.L., was sitting on a recliner in the living room.

**{¶ 6}** During the movie, Barnes and H.S. were sitting on opposite sides of the couch. H.S. eventually decided to lie down, and when she did, Barnes asked her "if [she] would tell." Trans. (Oct. 30, 2012), p. 108, ln. 11. H.S. was scared, so she answered, "no." *Id.* at 108, ln. 11-12. Barnes then began touching H.S.'s vagina over her sweat pants with his hand, and asked her "if it tickled." *Id*. at 109, ln. 24-23. H.S. replied, "no." *Id*. at 110, ln. 1-2. Barnes also rubbed his hand across H.S.'s stomach over her clothes, and tried to remove her sweat pants by putting his fingertips at the waist. When he tried to remove her pants, H.S. pushed Barnes's hand away, moved to the other end of the couch, and told him that she had to go home and take her dogs outside. H.S. then left D.'s house, went home, and told her parents what had happened.

**{¶ 7}** H.S.'s mother, V., testified that she and H.S.'s father are divorced and that H.S. resides mainly with her father at his residence, which is located near D.'s residence. V. stated

that on the evening of March 8, 2010, she went to the father's residence to drop off H.S.'s younger sister from gymnastics class. When she arrived, H.S. ran out to her crying, shaking, and very scared. H.S. told her that Barnes had tried to put his hand in her pants. She also said that D. was upstairs when it happened, and that M.L. was sleeping. The trial court allowed the hearsay testimony on the record under the excited utterance hearsay exception in Evid.R.803(2).

{¶ 8} D.'s daughter, L., testified that she and her three-year-old daughter, M.L., were visiting D.'s home on March 8, 2010. On the evening of her visit, L. saw both Barnes and H.S. upstairs in her mother's computer room. She recalled that Barnes was sitting down at a computer when H.S. came in and tried to sit on his lap. L. saw Barnes push H.S. off his lap, which caused her to fall to the floor with a "big thunk." *Id*. at 153, ln. 6. According to L., H.S. got up, ran downstairs, and left D.'s house. On cross-examination, H.S. testified that she did not remember going into D.'s computer room, sitting on Barnes, or being pushed off his lap.

{¶ 9} L. testified that she never saw Barnes watching a movie with H.S., but she did remember them talking about watching a movie. L. also stated that it would have been possible for H.S. and Barnes to have watched a movie either before or after the computer room incident.

{¶ 10} D. testified that on March 8, 2010, she had been doing yard work at her house all day. She recalled seeing H.S. playing in her yard with Barnes and some other children, but she did not see H.S. inside her house that evening. In addition, D. testified that she did not prepare dinner that evening or eat dinner with H.S. While washing dishes, D. heard a "thunk" on the second floor, and then heard someone run downstairs, but she did not see who it was. D. then went upstairs and found Barnes and L. sitting in her computer room. She claimed that this is where Barnes remained until the police came to her house. D. never saw Barnes watching a

movie with H.S.

{¶ 11}   Officer James Chambers, a patrolman with the Village of New Lebanon, was on duty the evening of March 8, 2010, and he responded to the sexual assault complaint involving H.S.   Chambers testified that he discussed the incident with H.S.'s parents and collected the sweat pants worn by H.S.   After obtaining a warrant, Chambers also collected a DNA sample from Barnes in order to compare Barnes's DNA with any potential DNA on H.S.'s sweat pants. According to Chambers, the sweat pants and Barnes's DNA sample were delivered to the Miami Valley Regional Crime Lab for testing.

{¶ 12}   The State did not enter any DNA evidence at trial.   The State's case was based solely on the testimony of H.S., V., and Officer Chambers.   Barnes moved for a Crim.R. 29 acquittal on grounds that there was insufficient evidence to convict him of Gross Sexual Imposition.   The trial court disagreed, and overruled the motion.

{¶ 13}   Barnes also objected to the trial court's jury instruction on direct and circumstantial evidence.   The trial court overruled the objection given that the jury instruction was a standard Ohio Jury Instruction.   After deliberation, the jury found Barnes guilty of Gross Sexual Imposition in violation of R.C. 2907.05(A)(4).   Barnes is now appealing from his conviction.

## II. Did the Trial Court Err in Overruling Appellant's

## Crim.R. 29 Motion for Acquittal?

{¶ 14}   Barnes's First Assignment of Error is as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S RULE

29 MOTION.

{¶ 15} Under this assignment of error, Barnes contends that the trial court should have granted his Crim.R. 29 motion for acquittal, because the State presented insufficient evidence to convict him of Gross Sexual Imposition under R.C. 2907.05(A)(4). Specifically, Barnes contends that the State failed to introduce any evidence that he engaged in sexual contact for "the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 16} Crim.R. 29(A) states that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *."

{¶ 17} "A sufficiency-of-the-evidence argument challenges whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law." *State v. Croom*, 2d Dist. Montgomery No. 25094, 2013-Ohio-3377, ¶ 36, citing *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). " 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id*., quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 18} In determining whether Barnes's conviction is supported by sufficient evidence,

we must first look to the elements of Gross Sexual Imposition as set forth in R.C. 2907.05(A)(4). The statute states as follows:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> * * *
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶ 19} The term " '[s]exual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "Sexual contact does not require that the offender have skin-to-skin contact with an erogenous zone of the victim; a touching of an erogenous zone covered by the victim's clothing is sufficient." *State v. Jones*, 2d Dist. Clark No. 2012-CA-95, 2013-Ohio-3760, ¶ 21, citing *In re A.L.*, 12th Dist. Butler No. CA2005-12-520, 2006-Ohio-4329, ¶ 23, fn. 1.

{¶ 20} "[I]n proving the violations of R.C. 2907.05(A)(4) * * * it [is] incumbent upon the state to prove not only that [the defendant] touched a person less than thirteen years of age or caused a person under age thirteen to touch him on the proscribed parts of the body listed in R.C. 2907.01(B), * * * but *also* that [the defendant] committed these acts for the specific purpose or intention of sexually arousing or gratifying either himself or the victim." (Citations omitted.) *State v. Mundy*, 99 Ohio App.3d 275, 287, 650 N.E.2d 502 (2d Dist.1994). Therefore, "the state

is obligated to prove beyond a reasonable doubt that the defendant's purpose or specific intention in touching the victim on the proscribed areas of the body set out in R.C. 2907.01(B) was sexual arousal or gratification of either the perpetrator or the victim." *Id*. at 288.

{¶ 21} "Proof of an accused's purpose or specific intent invariably requires circumstantial evidence, absent an admission." *Id*.  In *Mundy* we stated that:

> The determination of a defendant's mental state, absent some comment on his or her part, must of necessity be determined by the nature of the act when viewed in conjunction with the surrounding facts and circumstances. *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302.  This is, in fact, the well-recognized process of inferential reasoning.  This process by necessity incorporates an objective mechanism or standard in determining the defendant's state of mind by the use of circumstantial evidence. The trier of fact reviews the defendant's conduct in light of the surrounding facts and circumstances and infers a purpose or motive.  This conclusion by the trier of fact reflects the purpose that an ordinary prudent person would ascribe to a defendant's conduct.  *Mundy* at 288, quoting  *In the Matter of Grigson*, 4th Dist. Scioto No. 1881,1991 WL 62177, *3 (April 15, 1991).

{¶ 22}  We further stated that:

> [T]he proper method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01.  In making its decision the trier of fact may consider the type, nature and

circumstances of the contact, along with the personality of the defendant. From these facts the trier of facts may infer what the defendant's motivation was in making the physical contact with the victim. If the trier of fact determines, that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved. *Mundy*, 99 Ohio App.3d at 288-289, 650 N.E.2d 502, quoting *State v. Cobb*, 81 Ohio App.3d 179, 185, 610 N.E.2d 1009 (9th Dist.1991).

{¶ 23} Therefore, whether Barnes's physical contact with H.S. "was undertaken for the purpose of sexual arousal or gratification must be inferred from the type, nature, and circumstances surrounding the contact." *Mundy* at 289. Accordingly, we must determine whether "a reasonable person sitting as a juror [could] perceive from the defendant's actions, and all of the surrounding facts and circumstances, that the defendant's purpose or specific intention was arousal or gratification of sexual desire." (Emphasis deleted.) *Id*. at 289.

{¶ 24} In the case before us, H.S. testified that when she was 11 years old, Barnes touched her vagina over her sweat pants, rubbed her stomach over her clothes, and attempted to remove her sweat pants while they were watching a movie. There were no other adults around when the touching occurred. Before touching H.S., Barnes asked her "if she would tell." Barnes also asked H.S. whether "it tickled" when he touched her vagina.

{¶ 25} The type of physical contact described by H.S. involved Barnes touching an erogenous zone on her body when she was less than 13 years of age. The nature of Barnes's statements to H.S., before and during the touching, would allow a reasonable juror to infer that

Barnes's actions were motivated by desires of sexual arousal or gratification. Specifically, the fact that he asked her if "she would tell" indicates that he was going to do something wrong or inappropriate. Furthermore, the record does not indicate that the circumstances of the touching involved any medical or other appropriate purpose. Based on the type, nature, and circumstances of the touching, we find that H.S.'s testimony sufficiently establishes that Barnes engaged in "sexual contact" with a person less than 13 years of age in violation of R.C. 2907.05(A)(4).

{¶ 26} Barnes's First Assignment of Error is overruled.

### III. Was the Appellant's Conviction Against the Manifest Weight of the Evidence?

{¶ 27} Barnes's Second Assignment of Error is as follows:

APPELLANT'S CONVICTION WAS ENTERED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 28} Under this assignment of error, Barnes contends that his conviction was against the manifest weight of the evidence because: (1) there was no physical DNA evidence establishing that he engaged in sexual contact with H.S.; and (2) H.S.'s memory of the events of March 8, 2010, was questionable. Specifically, Barnes points to the fact that H.S. did not remember the computer room incident or what movie she and Barnes allegedly watched together. He also points to the fact that H.S. testified that she had dinner at D.'s home, when D. testified that there was no such dinner.

{¶ 29} "When a conviction is challenged on appeal as being against the weight of the

evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 30} "The jury's burden to assess the credibility of witnesses is especially important and arduous in sexual abuse cases * * * where the lack of physical evidence and eyewitnesses ordains a credibility contest." *State v. Jones*, 114 Ohio App.3d 306, 319, 683 N.E.2d 87 (2d Dist.1996). "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Cox*, 2d Dist. Montgomery No. 25477, 2013-Ohio-4941, ¶ 27, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way." (Citation omitted.) *State v. Bradley*, 2d Dist. Champaign No. 97 CA 03, 1997 WL 691510, *4 (Oct. 24, 1997).

{¶ 31} In this case, there are no eyewitnesses and no physical evidence of Barnes's offense; the only evidence is H.S.'s testimony. We note that there is no requirement that testimonial evidence of sexual abuse must be corroborated by physical or other evidence. (Citation omitted.) *State v. Kaufman*, 187 Ohio App.3d 50, 2010-Ohio-1536, 931 N.E.2d 143, ¶

71 (7th Dist.). Therefore, the fact that there was no DNA evidence of Barnes's sexual contact with H.S. does not render his conviction against the manifest weight of the evidence.

{¶ 32} The jury's decision in this case was based solely on witness credibility. The verdict reflects the jury's decision to credit H.S.'s testimony to a greater degree than it did the testimony of Barnes's defense witnesses. This decision was within the competence of the jury, because its members had seen and heard all the witnesses at trial. Accordingly, the jury's determination is entitled to substantial deference by this court. That H.S.'s testimony was not corroborated by other evidence does not detract from the validity of the jury's decision that H.S. was a credible witness. Therefore, the jury's verdict was not against the manifest weight of the evidence.

{¶ 33} Barnes's Second Assignment of Error is overruled.

## IV. Was the Trial Court's Jury Instruction on Direct and Circumstantial Evidence Incorrect?

{¶ 34} Barnes's Third Assignment of Error is as follows:

THE TRIAL COURT ERRED IN ISSUING ITS CHOSEN JURY INSTRUCTIONS.

{¶ 35} Under this assignment of error, Barnes challenges the trial court's jury instruction on the weight of circumstantial and direct evidence. The trial court instructed that:

Direct evidence and circumstantial evidence are of equal weight. The law makes no distinction between direct and circumstantial evidence as to the degree of proof required. And facts may be proven by either type of evidence or a

combination of both. Each type is accepted as a reasonable method of proof. With the evidence that is both direct and circumstantial, the combination of the two must satisfy you of the Defendant's guilt beyond a reasonable doubt. Trans. (Oct. 30, 2012), p. 179, ln. 1-8.

{¶ 36} Barnes contends that the trial court should have instructed that direct and circumstantial evidence *may* be of equal weight, not that they *are* of equal weight. He claims that the trial court's instruction incorrectly advises the jury that the two kinds of evidence must be of equal weight under all circumstances.

{¶ 37} Prior to *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991), direct and circumstantial evidence were viewed differently. In *State v. Kulig*, 37 Ohio St.2d 157, 309 N.E.2d 897 (1974), the Supreme Court followed longstanding precedent to hold that "[c]ircumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt." *Id.* at syllabus. *Jenks* expressly overruled *Kulig*, holding that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Jenks* at paragraph one of the syllabus. As a result of *Jenks*, an explanation that "[d]irect evidence and circumstantial evidence are of equal weight" became part of standard jury instructions. *See State v. Emerick*, 2d Dist. Montgomery No. 15768, 1997 WL 309412, *11 (June 6, 1997). However, "[c]ircumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable." *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988), citing *United States v. Andrino*, 501 F.2d 1373, 1378 (9th Cir.1974).

**{¶ 38}** In *Emerick*, we held the "equal weight" instruction was consistent with case law and not prejudicially erroneous. We cautioned, however, that the instruction had the potential to mislead a jury to improperly balance the evidence even if circumstantial evidence in a given case outweighed direct evidence or vice-versa. We concluded that the better approach was to instruct: " '[T]he law makes no distinction between direct and circumstantial evidence but simply requires that the jury be satisfied of the defendant's guilt beyond a reasonable doubt from all the evidence in the case * * *.' " *Emerick* at *12, quoting *U.S. v. Nelson*, 419 F.2d 1237 (9th Cir.1969). The pattern Ohio jury instruction no longer contains the "equal weight" language, but rather, consistent with *Emerick*, states: "You may consider both direct and circumstantial evidence. You must decide from all the direct and circumstantial evidence, taken together, whether the state has proven all of the elements of the charged offense(s) beyond a reasonable doubt." 2 OJI-CR 409.01(2).

**{¶ 39}** Although the "equal weight" instruction has the potential to mislead, an instruction fashioned from *Jenks* may have a purpose. If counsel for one side or the other argues that the jury should disregard certain evidence because it is "only circumstantial," the court should correctly inform the jury that "neither circumstantial evidence nor direct evidence is inherently inferior to the other." This would be more accurate than the now-disregarded OJI "equal weight" language.

**{¶ 40}** In the present case, the "equal weight" instruction given by the trial court was not prejudicially erroneous. It is a correct statement of law, and the court also instructed the jury "[w]ith the evidence that is both direct and circumstantial, the combination of the two must satisfy you of the defendant's guilt beyond a reasonable doubt." Trans. at 179. Also, the

jury's decision in this case was based on witness credibility, not on whether the evidence was direct or circumstantial. The appellant's iteration of the instruction-that the two types of evidence "may" be of equal value-would not have made any difference.

{¶ 41} Barnes's Third Assignment of Error is overruled.


## V. Did the State Engage in Prosecutorial Misconduct During Its Closing Argument?

{¶ 42} Barnes's Fourth Assignment of Error is as follows:

THE PROSECUTOR COMMITTED REVERSIBLE MISCONDUCT.

{¶ 43} Under this assignment of error, Barnes contends that the State engaged in prosecutorial misconduct during closing arguments by: (1) commenting on his failure to testify at trial; (2) expressing the prosecutor's personal views regarding the credibility of the defense witnesses; (3) making improper, prejudicial comments regarding the evidence; and (4) making statements that went beyond the evidence presented at trial.

{¶ 44} Before addressing each allegation of misconduct, we note that prosecutors are generally "entitled to considerable latitude in opening and closing arguments." (Citations omitted.) *State v. Whitfield*, 2d Dist. Montgomery No. 22432, 2009-Ohio-293, ¶ 12. "A prosecutor may freely comment in closing argument on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom." *Id*., citing *State v. Lott,* 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). "In determining whether the prosecutor's remarks were prejudicial, the State's argument must be viewed in its entirety." *Id*., citing *State v. Ballew,* 76 Ohio St.3d 244, 255, 667 N.E.2d 369 (1996).

{¶ 45} "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." (Citation omitted.) *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Jeffery*, 2013-Ohio-504, 986 N.E.2d 1093, ¶ 15 (2d Dist.), quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). "The question is whether the prosecutor's misconduct so infected the accused's trial with unfairness that the accused's convictions came in violation of the right to due process." *Id.*, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 644, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

{¶ 46} We further note that Barnes failed to object to any of the State's comments during closing argument. Accordingly, Barnes waived all but plain error. (Citation omitted.) *State v. Wickline*, 50 Ohio St.3d 114, 119-120, 552 N.E.2d 913 (1990). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *Id.*, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. (Other citation omitted.) The plain error standard is to be exercised with "the utmost caution under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Long* at 91, paragraph three of the syllabus.

1. Commenting on Appellant's

Failure to Testify at Trial

{¶ 47} Barnes claims that the following statement was an improper comment on Barnes's failure to testify at trial.

And she told you that he put his hands on her vagina. She told you that he was rubbing her stomach. She told you that he was trying to put his hands down her pants, and she pushed him away. *That is all unrefuted. We haven't heard anything to the contrary.* (Emphasis added.) Trans. (Oct. 30, 2012), p. 168, ln. 10-14.

**{¶ 48}** It is well established that "it is improper for a prosecutor to comment on a defendant's failure to testify." (Citations omitted.) *State v. Twyford*, 94 Ohio St.3d 340, 355, 763 N.E.2d 122 (2002). In determining whether a comment violated the defendant's Fifth Amendment rights, we must consider " ' whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' " (Emphasis deleted.) *State v. Webb*, 70 Ohio St.3d 325, 328, 638 N.E.2d 1023 (1994), quoting *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir.1955).

**{¶ 49}** The State cites *State v. Lockett*, 49 Ohio St.2d 48, 358 N.E.2d 1062 (1976), rev'd in part, 438 U.S. 586, 98 S. Ct. 2954, 57 L.Ed. 2d 973 (1978), and overruled by *State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140 (1977), for the proposition that the prosecutor's statement was not improper. In *Lockett*, the Supreme Court of Ohio stated that "statements made by the prosecutor to the effect that the evidence against appellant was uncontradicted and unrefuted does not constitute a comment by the prosecutor upon the failure of the defendant to testify, prejudicial to appellant's right to a fair trial." *Id.* at 65.

**{¶ 50}** The State also cites *State v. Ferguson*, 5 Ohio St.3d 160, 450 N.E.2d 265 (1983), for the same proposition. In *Ferguson*, the Supreme Court explained that "[a] reference by the prosecutor in closing argument to uncontradicted evidence is not a comment on the accused's

failure to testify, where the comment is directed to the strength of the state's evidence and not to the silence of the accused, and the jury is instructed not to consider the accused's failure to testify for any purpose." *Id.* at 160, paragraph one of the syllabus.

{¶ 51} More recently, however, the Supreme Court held that "[a] prosecutor generally may note that his or her evidence is uncontradicted *unless it is evidence only the defendant could contradict.* See Annotation (1967), 14 A.L.R.3d 723, 730-743." (Emphasis added.) *Webb*, 70 Ohio St.3d at 329, 638 N.E.2d 1023.

{¶ 52} In this case, the prosecutor stated that H.S.'s testimony was "unrefuted." It is clear from the record that the prosecutor was specifically referring to the portion of H.S.'s testimony that described how Barnes had touched her. Because Barnes and H.S. were the only individuals present during the touching in question, they were the only individuals capable of testifying about what had happened between them. In other words, only Barnes could have contradicted H.S.'s testimony. As a result, the jury could have naturally and necessarily taken the prosecutor's remark to be a comment on Barnes's failure to testify, and not just a comment on the overall strength of the State's case. Accordingly, the comment is improper.

{¶ 53} Even though the prosecutor's comment is improper, it does not amount to plain error. The trial court instructed the jury not to consider Barnes's decision not to testify for any purpose, and "it must be generally presumed that the jury followed the instructions of the trial judge." *Ferguson*, 5 Ohio St.3d at 163, 450 N.E.2d 265. Under the circumstances of this case, we do not find the prosecutor's comment to be so flagrant that it affected the outcome of trial or created a manifest miscarriage of justice.

## 2. Personal Views About the Credibility

## of Defense Witnesses

{¶ 54}   Barnes claims that the following statement improperly expressed the prosecutor's personal opinion on the credibility of the defense witnesses.

He also doesn't get credit for his family members coming in and trying to make up a story to cover all this up.   I didn't believe anything that they said, but that's up to you to decide.   Trans. (Oct. 30, 2012), p. 171, ln. 6-9.

{¶ 55}   The law is clear that "[i]t is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused."   (Citation omitted.)   *Smith*, 14 Ohio St. 3d at 14, 470 N.E.2d 883.

{¶ 56}   While we find that the prosecutor's comment improperly expressed his personal opinion on the credibility of the defense witnesses, we do not find that the comment amounts to plain error.   Immediately after the improper remark was made, the prosecutor informed the jury that witness credibility was for them to decide.   In addition,  the trial court informed the jury that they "are the sole judges of * * * the credibility of the witnesses * * *."   Trans. (Oct. 30, 2012), p.179, ln 20-22.    The instructions given by the prosecutor and the trial court were sufficient to prevent the improper comment from affecting the outcome of trial and creating a manifest miscarriage of justice.   Accordingly, the comment does not amount to plain error.

## 3. Improper Comments Regarding

## the Evidence

{¶ 57}   Barnes contends that the prosecutor made highly prejudicial comments on the

evidence. Specifically, he claims that the following statement instills anger and fear in the jury, and distracts the jury from its duty to consider only the facts.

> Not every victim is going to act the same, either. Think about it, this event was almost three years ago for [H.S.]. A lot of time has passed. So, you know what, he doesn't get credit if she wasn't up there crying. He doesn't get credit because time has made her numb. Trans. (Oct. 30, 2012), p. 171, ln. 1-5.

**{¶ 58}** For the prosecutor's comment to warrant reversal on grounds of prejudice, the remarks must be "so inflammatory as to render the jury's decision a product solely of passion and prejudice against the appellant." *State v. Williams*, 23 Ohio St.3d 16, 20, 490 N.E.2d 906 (1986), certiorari denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987).

**{¶ 59}** In this case, we are not convinced that the jury's verdict was merely a product of passion and prejudice. There is sufficient evidence to support the verdict, and the prosecutor's comment is not so inflammatory as to arouse emotions that would prejudice the defendant's substantial rights. In addition, the trial court explained to the jurors that the verdict must be based on the evidence and not statements made during closing arguments, Trans. p. 178, ln. 11-12; p. 179, ln 9-12, and we must presume that the jury followed the court's instruction. *Ferguson*, 5 Ohio St.3d at 163, 450 N.E.2d 265. Furthermore, we do not find that the prosecutor's comment affected the outcome of trial or created a manifest miscarriage of justice. Therefore, even if the prosecutor's comment was improper, it does not amount to reversible plain error.

4. Statements Beyond the Evidence

Presented at Trial

**{¶ 60}** Barnes claims that the following statement by the prosecutor was improper, because it went beyond the evidence presented to the jury.

DNA cuts both ways. If I had DNA in here – *well, his DNA is on her pants*. Well, it must have come from when they were playing outside. He was touching her outside when they were just horsing around. It cuts both ways. DNA doesn't matter. It does not matter. I guarantee you, if there were DNA on those pants, he would have an explanation for why it's there. So, it's not there, it's a wash. (Emphasis added.) Trans. p. 175, ln. 19-25.

**{¶ 61}** "It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury." (Citation omitted.) *Smith*, 14 Ohio St.3d at 14, 470 N.E.2d 883. Barnes contends that the prosecutor's comment, "well, his DNA is on her pants" went beyond the evidence, because it informed the jury that DNA evidence existed, when no such evidence had been admitted at trial.

**{¶ 62}** We disagree with Barnes's interpretation of the prosecutor's comment. "[I]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *Twyford,* 94 Ohio St.3d at 356, 763 N.E.2d 122.

**{¶ 63}** Here, Barnes is isolating a small portion of the prosecutor's comment and giving the comment its most damaging meaning. When looking at the context of the entire comment, it is clear that the prosecutor was speaking hypothetically about the existence of DNA. The prosecutor was attempting to say that if Barnes's DNA had been found on H.S.'s sweat pants, he would have had an excuse for it being there, since he and H.S. were seen playing together on the

day in question.   In addition, the phrases,  "if there were DNA on those pants" and "[s]o it's not there, it's a wash," clearly indicate that the prosecutor was not informing the jury that DNA evidence existed.   Accordingly, the comment does not go   beyond the evidence.

{¶ 64}   For the foregoing reasons, the prosecutor's comments during closing argument do not amount to reversible misconduct.   Barnes's Fourth Assignment of Error is overruled.

### V. Did the Appellant Receive Ineffective Assistance of Counsel?

{¶ 65}   Barnes's Fifth Assignment of Error is as follows:

APPELLANT  WAS  PREJUDICED  BY  INEFFECTIVE  ASSISTANCE OF COUNSEL.

{¶ 66}   Under this assignment of error, Barnes claims that he received ineffective assistance of counsel, because his trial counsel failed to:   (1) subpoena a forensic expert to testify regarding the lack of DNA evidence; and (2) object to the prosecutor's improper comments during its closing argument.

{¶ 67}   "In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice." *State v. Matthews*, 189 Ohio App.3d 446, 2010-Ohio-4153, 938 N.E.2d 1099, ¶ 39 (2d Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance, and to show deficiency, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness." *Id*., citing *Strickland* at 690.   Prejudice exists where "there is a reasonable probability that, but for counsel's deficient performance, the outcome would have

been different." *Strickland* at 687.

### 1. Defense Counsel's Failure to

### Subpoena Forensic Expert

{¶ 68} Defense counsel's failure to subpoena a forensic expert to testify regarding the lack of DNA evidence did not fall below an objective standard of reasonableness. During voir dire, the State made it clear to the jury that there was not going to be any DNA evidence presented at trial, Trans. (Oct. 30, 2012), p. 23, ln. 6-7, and no such evidence was presented during the State's case-in-chief. Because the prosecution already established that there was no DNA evidence, it was unnecessary for the defense to call a forensic expert to testify to the same matter.

{¶ 69} Even if defense counsel's decision had qualified as deficient performance under *Strickland*, Barnes failed to establish that he was prejudiced by the decision. We cannot find by a reasonable probability that expert testimony regarding the lack of DNA evidence would have changed the jury's decision, when the jury already knew this fact going into deliberation. Defense counsel made sure the jury was aware of this fact during closing argument when he said:

> Because, in spite of Officer Chambers collecting DNA evidence from [Barnes] and submitting it to the crime lab and submitting [H.S.'s] jogging pants to the crime lab, you have no DNA evidence. There's no testimony from anyone from the crime lab regarding DNA evidence. There's no physical evidence that anything happened. None whatsoever. Trans. p. 174, ln. 1-6.

{¶ 70} Accordingly, we do not find that defense counsel provided ineffective assistance

of counsel for failing to subpoena a forensic expert.

## 2. Defense Counsel's Failure to Object

### to Prosecutor's Improper Comments

**{¶ 71}** The State made improper comments during its closing argument, and defense counsel should have objected to them. Assuming that the failure to object qualifies as deficient performance under *Strickland*, Barnes still must establish resulting prejudice in order to succeed on his ineffective assistance of counsel claim.

**{¶ 72}** In an attempt to demonstrate prejudice, Barnes employs the cumulative error doctrine. He argues that the cumulative effect of counsel's failures unfairly prejudiced him and violated his constitutional right to a fair trial.

**{¶ 73}** In response to Barnes's argument, we note that " 'there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.' " *State v. Hill,* 75 Ohio St.3d 195, 661 N.E.2d 1068 (1996), quoting *United States v. Hasting*, 461 U.S. 499, 508-509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). "[E]rrors cannot become prejudicial by sheer weight of numbers." *Id.,* citing *State v. Davis,* 62 Ohio St.3d 326, 348, 581 N.E.2d 1362 (1991).

**{¶ 74}** In this case, a few errors occurred during the prosecutor's closing arguments, and as we previously discussed, those errors did not affect the outcome of trial or create a manifest miscarriage of justice. Even when viewed cumulatively, we cannot find that the errors prejudiced Barnes's constitutional right to a fair trial. Accordingly, Barnes was not prejudiced by his counsel's failure to object to the prosecutor's improper comments. For this reason, his

ineffective assistance of counsel claim must fail.

**{¶ 75}** Barnes's Fifth Assignment of Error is overruled.

## VI. Conclusion

**{¶ 76}** Having overruled all of Barnes's assignments of error, the judgement of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Candi S. Rambo
Hon. Michael Tucker